### TEXAS LIFE INS. CO. v. VALLEY VIEW NAT. BANK et al.

No. 12548.

Court of Civil Appeals of Texas. Fort Worth.

Oct. 10, 1931.

Rehearing Denied Nov. 14, 1931.

Williams, Williams, McClellan & Lincoln and Kyle Vick, all of Waco, for appellant.

Winfrey & Lane, of Dallas, for appellees.

BUCK, J.

On May 16, 1930, the Texas Life Insurance Company, appellant here, filed a petition and bill of interpleader, alleging that it was a life insurance company, and that on April 18, 1922, it had issued to one Charles O. Ussery, of Valley View, Tex., its policy of insurance in the amount of $3,000; that said Charles O. Ussery designated his estate as the beneficiary in said policy, and that said policy was later transferred by said Ussery to the First Guaranty State Bank of Valley View as collateral; that said First Guaranty State Bank of Valley View later ceased to do business, and transferred said policy to its successor, the Valley View National Bank; that said last-named bank now claims to be the owner and beneficiary under the policy; that said Charles O. Ussery died on March 2, 1930, and that thereafter, on March 10, 1930, due proofs of death were received by the plaintiff, executed by the Valley View National Bank as claimant; that said proofs of death in all other respects were regular, and that plaintiff is now ready to pay the proceeds of this policy to the person or corporation entitled thereto; that said Ussery left a written will at his death, which was duly probated in the county court of Cooke county, and, under the terms of said will, his wife, Mrs. Besse Cullum Ussery, was named independent executrix of said estate without bond; that plaintiff believes, or has reason to believe, that the said Mrs. Besse Cullum Ussery is now claiming, or will make claim to, the proceeds of this policy, together with the said Valley View National Bank of Valley View, and the plaintiff tendered in court and deposited in the registry of the court the full face amount of said policy in the sum of $3,000, and asked the court that said defendants and each of them be cited to appear at the next term of the court and present their claims, if any, to said court, and said proceeds of said policy be ordered paid over to the rightful claimant under the judgment of the court. Plaintiff further pleaded that it had employed an attorney, Kyle Vick, to file its interpleader, and to protect its interest in the matter at a reasonable cost of $150, and said plaintiff had agreed to pay its attorney said amount. Wherefore plaintiff prayed that each of the defendants be cited to appear at the next regular term of the court and answer, and that final hearing and adjudication of the rights of all parties be had, and that the plaintiff be relieved of further liability and recover its costs including attorney's fees.

On June 5, 1930, twenty days after the original petition and bill of interpleader had been filed, Mrs. Ussery, as independent executrix of the estate of Charles C. Ussery, answered and alleged that she did not now, nor has she at any time, made any claim to the proceeds of the policy involved, which policy had been duly assigned by said assured to the First Guaranty State Bank of Valley View as security for an indebtedness which said assured owed the said bank. She further pleaded that it was her understanding that said bank and its successor, the Valley View National Bank of Valley View, have paid all insurance premiums on said policy, and under these circumstances she now disclaims for herself and the estate of said Charles C. Ussery, deceased, any interest whatsoever in the proceeds of said policy. This answer was signed and duly sworn to by Mrs. Ussery.

On June 6, the next day, the Valley View National Bank answered and alleged substantially the same facts alleged in the original petition and bill of interpleader, and further alleged that the policy of insurance involved had been assigned to said bank, and that said bank had at the death of said Ussery made proper and acceptable proofs of death, and that the debt then owing by the estate of said Ussery to the bank was in excess of the amount of the policy, and the amount of the policy was then due and owing to the defendant; that, at the time that the defendant made proper proofs of said Ussery's death, it demanded the full payment of the policy to it; that plaintiff had failed and refused to pay

said amount; and that more than 30 days had elapsed since such proof had been received by the said insurance company. Wherefore defendant prayed that it have judgment against plaintiff for the full amount of the policy with costs of suit and with a reasonable attorney's fee in the sum of $1,000. This pleading was signed by Winfrey & Lane, attorneys for defendant.

On September 19, 1930, the defendant Valley View National Bank filed its trial amendment and cross-action, in which it alleged that on May 30, 1930, the defendant, through its attorneys, made demand upon plaintiff, through its attorney, Judge Kyle Vick, for the payment of the full amount due the defendant as assignee and pledgee of the life insurance policy issued to Charles C. Ussery; that plaintiff failed and refused to pay said sum, and, more than 30 days having elapsed since such demand, defendant prayed that it recover from plaintiff the principal of said policy, interest, and 12 per cent. penalty, and its reasonable attorney's fees.

Upon a hearing before the court, the court rendered judgment that the interpleader sought by the Texas Life Insurance Company is not proper and should be denied, and that the defendant the Valley View National Bank of Valley View is entitled to and should recover judgment against plaintiff for the face value of the policy sued upon herein, together with 12 per cent. penalty of said amount as statutory damages, together with a reasonable attorneys' fee of said defendants' attorneys, which the court finds to be the sum of $300. The court rendered judgment dismissing Mrs. Ussery from the suit on her disclaimer. The court filed its findings of fact and conclusions of law as follows:

### "Findings of Fact.

"1. I find that on April 18, 1922, the plaintiff issued to Charles C. Ussery a policy of life insurance No. 26731, in the amount of $3,000.00, and that the estate of said Ussery was made the beneficiary therein.

"2. I find that on May 9, 1922, the said Ussery by an instrument in writing transferred, assigned and set over to the First Guaranty State Bank of Valley View, as collateral, all his right, title and interest in said policy, and all benefits and advantages to be derived therefrom to the extent of such interest as such assignee might have when such policy became a claim, and on the 11th day of May, 1922, the plaintiff entered said assignment on its books.

"3. I find that the said Charles C. Ussery, died on March 2, 1930, and that due proofs of death were executed by the defendant Valley View National Bank and delivered to and received by the plaintiff on March 10th, 1930. Said proofs were in all respects regular.

"4. I find that the defendant Valley View National Bank is the successor and assign of the said First Guaranty State Bank and owned and held all the rights and interest in said policy of insurance at the time of the death of the said Ussery that had theretofore at any time been held by the First Guaranty State Bank, and that it held and owned the indebtedness of the said Ussery formally [formerly] held by the First Guaranty State Bank, as collateral for which the policy had been assigned.

"5. I find that the First Guaranty State Bank and its successor, the defendant Valley View National Bank, paid all the premiums that had ever been paid on said policy, and that the First Guaranty State Bank induced the said Ussery to take out said policy of insurance to secure the bank for his indebtedness.

"6. I find that at the time of his death, the said Ussery was indebted to the defendant bank in excess of the amount of the policy of insurance.

"7. I find that the defendant bank at all times claimed the proceeds of said policy of insurance after the death of the said Ussery.

"8. I find that the Executrix of the estate of the said Charles C. Ussery, namely, his widow, Mrs. Bessie Cullum Ussery, has never made any claim to the proceeds of such policy, and was not making any claim thereto at the time this suit was filed, and that she had, prior to the institution of the suit, informed the plaintiff that if it would send a check for the proceeds of the policy either to her or to the defendant bank, made payable to the order of herself and the bank, she would indorse the check and turn it over to the bank, and let the bank have all the money.

"9. I find that the defendant is the only party who has ever claimed the proceeds of said policy of life insurance, either before or after this suit was instituted.

"10. I find that $300.00 is a reasonable amount for attorney's fees for the defendant bank, and that demand was duly made by the defendant bank upon the plaintiff to pay said amount more than thirty days prior to the filing of said defendant's trial amendment and cross-action.

"11. I further find that long before this suit was instituted the plaintiff knew that the defendant Valley View National Bank held the assignment of the policy.

### "Conclusions of Law.

"1. I conclude that as a matter of law that an interpleader is not properly filed unless there are at least two actual claimants for the property or fund held by the party desiring the interpleader.

"2. I conclude further that the plaintiff would have been amply protected had it sent a check for the proceeds of the policy either to the defendant Valley View National Bank

or the defendant Mrs. Besse Cullum Ussery, the Executrix of the estate of Charles C. Ussery, deceased, payable to both.

"3. I conclude further that the defendant Bank, having made due demand upon the plaintiff for the payment of said amount of money more than thirty days prior to its cross-action for the amount, is entitled to the 12 per cent. penalty provided by statute.

"4. I further conclude that the defendant bank is entitled to recover attorney's fees in the amount of $300.00 which amount has been found to be reasonable.

"Therefore, upon the foregoing findings of fact and conclusions of law, I render judgment for the defendant Bank for the amount of the policy, together with 12 per cent. penalty and $300.00 attorney's fees.

"B. W. Boyd, District Judge."

From the judgment so rendered, the Texas Life Insurance Company has appealed.

### Opinion.

The only part of the judgment rendered by the trial court of which the appellant complains is that part of the judgment denying it any attorneys' fees and costs of suit. The appellee the Valley View National Bank contends that the judgment should stand, allowing it attorneys' fees, costs of suit, and 12 per cent. penalty. The appellant's assignments may be grouped, and statement made that the assignments attack the finding of the trial court that no sufficient cause for the filing of plaintiff's bill of interpleader existed, and by the finding that Mrs. Besse Cullum Ussery has never made any claim to the proceeds of the policy, and did not claim any part of it, either individually or as executrix of the estate of Charles C. Ussery.

The evidence shows that, at the time the counsel for the insurance company, to wit, Judge Kyle Vick, and C. B. Johnson, the cashier of the bank, talked to Mrs. Ussery, Mrs. Ussery learned for the first time of the existence of the policy of insurance, and that it had been assigned to the First Guaranty State Bank of Valley View, the predecessor of the Valley View National Bank, and through which the said Valley View National Bank succeeded to any title or interest in the policy held by the First Guaranty State Bank. Mrs. Ussery testified:

"I knew nothing of it whatever. Neither did I know anything whatever about the indebtedness. It was all news to me. They asked me if I was ready to sign the disclaimer and I told them if I had no claim to the policy I would. But, of course, knowing nothing whatever about it I tried to say as little as I could. I told them at the time that Mr. Murphy was my lawyer and if I had no claim to it I would have to talk to him about it first before I would sign disclaimer, but that

I did not want to make any claim to the policy at all if I had no claim in it. They asked me if I would sign this disclaimer, and I said, 'Yes, if it is the thing to do.' However, I did tell them at the time that Mr. Murphy was my lawyer and I would like to talk to him about it first before I signed anything. However, I did not make any claim to it and I didn't want any court proceedings if they could be avoided. Of course, it not being my affair entirely, being as the estate was concerned in it too, since I was acting for the estate, I tried to say as little as I could and I told them I would like to talk with Mr. Murphy about it. However, at the time I told them I was making no claim whatever. I told them if I had no right to it that I made no claim to it. * * * I told them that I did not make any claim; that Mr. Murphy was my lawyer and I didn't like to do anything without talking to him about it. However, I was going to Dallas that afternoon. I didn't make an effort to see Mr. Murphy that day about this matter, because I was in a hurry to leave for Dallas. I felt that it was hardly a matter for the estate.

"I did not take the matter up with Mr. Murphy. The next thing I heard of it was just a short time later before I came back to Gainesville. Mr. Porter called me and asked me if I knew this matter had been put in court. I had just found out that it had been put in court a short while before he called me. I told him I knew nothing whatever about that and I immediately called Mr. Murphy and asked him about it and told him I would be up here that afternoon. My brother came up here with me. However, that same morning Mr. Johnson talked to me about it in Dallas and came there with a paper for me to sign. I told him I would rather not sign the paper until I came up here and talked it over with Mr. Murphy. I came up here that afternoon, I think I came the same day, and talked it over with Mr. Murphy and he said he would look into the matter for me before I should sign anything. However, he did look into the matter and sent the paper to me and I signed it and returned it to them."

This was after the suit had been filed, as the bill of interpleader, as heretofore shown, was filed on May 16, and the disclaimer was not filed until June 5, 1930. Mr. Murphy testified: That Mrs. Ussery and her brother came to his office and stated to him that she understood from some source that suit was filed up there on an insurance policy issued on the life of her husband, and that they [evidently meaning the Valley View National Bank and the insurance company] wanted her to sign some sort of papers releasing her right to it. That he suggested that they probably wanted her to sign a disclaimer and she said that was it. She wanted to know if

she should sign it or not. That he told her he could not tell her whether she should sign it or not, but that he would look into it and tell her later. That he saw Mr. Johnson and told him what he had said to Mrs. Ussery and asked him to produce the papers on which he based his claim, and Mr. Johnson brought the papers up there and he saw the policy had an assignment on it. That he told Mr. Johnson that the bank did not have any insurable interest, but that the assignment was probably good for the amount that was due. That he understood that the bank paid some premiums, and it struck him and struck Mrs. Ussery that the bank was more or less entitled to the money. That he told Mrs. Ussery to sign the disclaimer, and he would decide whether or not it should be filed.

Mrs. Ussery testified that, when the attorney for the insurance company and Mr. Johnson called on her, she told them that, if they would send her a check made out to her and to the Valley View National Bank, she would consult her attorney, and, if it was right for her to sign a disclaimer, she would do so.

■ We do not think it was necessary for, Mrs. Ussery to file a contest of the payment of the amount of the policy to the bank, either individually or as administratrix of the estate of Charles C. Ussery, in order to justify the insurance company in filing this bill of interpleader. The insurance company was making no contest as to the payment of the amount of the policy, and, as soon as they investigated and found out that Mrs. Ussery was the survivor of the marriage between her and Charles C. Ussery, and the administratrix of the estate of Charles C. Ussery, and that she would not agree that she would sign a disclaimer, but wanted to consult an attorney before she would do so, the insurance company filed the bill of interpleader. To give rise to a cause of action against a life insurance company for the statutory penalty and attorneys' fees under article 4736, Revised Civil Statutes, for failure to pay a loss within thirty days after demand, it must appear that the failure to pay the loss was a denial of the insurance company that it owed the amount of the policy to the claimant. A life insurance company has the right to have settled by a court any claims to the policy, or, the proceeds thereof, before paying the amount to a claimant. It was in evidence that the note given by Ussery was barred by limitation at the time of Ussery's death, and that he had been declared a bankrupt before his death, and had listed this debt as a claim and had been discharged in bankruptcy. Mr. Johnson testified that he told the president of the insurance company that Mr. Ussery had acknowledged the justness of the debt after he had been discharged in bankruptcy and promised to pay it, but this promise was in parol, if any, and no proof of the promise to pay the debt after the discharge in bankruptcy was made by Mr. Johnson or by the bank. We think there was sufficient doubt in the minds of the officers of the insurance company as to whether or not the money was due to the bank, or to the widow and administratrix of said Ussery, to justify the course pursued by the insurance company in filing this bill of interpleader and in tendering into court the amount of the policy. Counsel for appellees acknowledge that there was some conflict in the evidence as to whether Mrs. Ussery had made any claim to the proceeds of the policy and was not making any claim thereto at the time this suit was filed, and that she had, prior or to the institution of this suit, informed the plaintiff that, if they would issue a check made payable to the order of herself and the bank, she would indorse the check and turn it over to the bank and let the bank have all the money. In appellee's brief it is stated:

"Mrs. Ussery herself was somewhat wishy-washy. The utmost that appellant can get out of any of her testimony is that she thought perhaps she ought to consult her attorney, before she executed any release. As to that, she did finally consult her attorney and executed a disclaimer in this suit."

■ The disclaimer was filed some 20 days after the suit was filed. We think that under the facts shown it was reasonably doubtful whether the executrix, Mrs. Besse Cullum Ussery, would assert a claim to the proceeds of the policy adverse to that of defendant bank; that at the time of the filing of the bill of interpleader, there being no written evidence that the note held by the bank had been acknowledged by Ussery, after he had been discharged in bankruptcy, nor any written evidence that he had agreed to pay the note due the bank, and to be paid out of the policy, a sufficient doubt was reasonable in the minds of the officers of the insurance company to justify the filing of the bill of interpleader. And, further, there was reasonable doubt at the time of the filing of the bill of interpleader whether, in the liquidation of the First Guaranty State Bank and its reorganization as the Valley View National Bank, the latter bank had acquired the indebtedness against the insured. Plaintiff, prior to filing the bill of interpleader, had asserted in good faith its willingness to pay the proceeds of the policy to defendant bank if it would verify its claim and obtain an allowance of the claim by the executrix of insured's estate, which was not done. The duty devolved on the bank to submit proof of its interest in the policy. Andrews v. Union Central Life Ins. Co., 92 Tex. 584, 50 S. W. 572.

We conclude that the bill of interpleader was properly filed, and that upon adjudication it should have been held that the insurance company showed its willingness to pay the insurance to any one who showed himself or itself entitled to receive it.

■■ Therefore the judgment below is reformed so as to sustain the bill of interpleader and to award to the appellee insurance company $150 for preparing and filing the same, which amount is shown by the evidence of Mr. James Adams as being a reasonable fee for such services, and we further hold that the appellee bank was not entitled to any attorneys' fees, or to the costs of suit. In other respects the judgment is affirmed.

The costs of this appeal and costs of the trial court are adjudged against the appellee.

Judgment reformed and affirmed.

### On Appellant's Motion for Rehearing.

■ It will be remembered that the judgment below in this case was reversed and judgment here entered for appellant, on a former hearing. Appellant files a motion for rehearing, and cites a portion of the statement of facts, which says "that $300 would be a reasonable fee to be paid the attorneys for the Texas Life Insurance Company as attorneys' fees for filing the interpleader in this case." It will be noted that plaintiff in his original petition asked only for $150 as attorneys' fees for filing the bill of interpleader, and such amount is determined by the amount asked for in plaintiff's petition, and not by the agreement of the attorneys. Therefore the motion of appellant for rehearing is overruled.

The costs of filing this application are adjudged against appellant.

### On Appellees' Motion for Rehearing.

Appellees urge that this court entirely disregarded the findings of fact which were made in this cause by the trial court, and urges that they were supported by the record evidence in the case, and based its opinion upon findings of fact of this court which are directly opposed to the findings of fact made by the trial court. The only so-called findings of fact upon which this court based its opinion were findings upon questions of law, and not upon questions of fact. We believe we were correct in the disposition of this case in our former opinion, and the motion for rehearing is also overruled.