**Sarah Lou MURRAY, Appellant,**

v.

**BANKERS LIFE COMPANY, Appellee.**

No. 15787.

Court of Civil Appeals of Texas.

Fort Worth.

Feb. 15, 1957.

Rehearing Denied March 15, 1957.

O'Neal Dendy, San Angelo, for appellant.

Cantey, Hanger, Johnson, Scarborough & Gooch and J. A. Gooch, Fort Worth, for appellee.

BOYD, Justice.

Appellee Bankers Life Company issued a policy of insurance on the life of Otis Carl Murray. His wife, appellant Sarah Lou Murray, was the named beneficiary in the policy. Otis Carl Murray died on July 24, 1955. On August 24, 1955, appellant was indicted for his murder. Appellant sued appellee to recover the proceeds of the policy, with penalties, interest, attorney's fees and costs. Appellee deposited the proceeds in the registry of the court, and invoked its judgment. In a trial to the court, judgment was rendered for appellant for $4,355, less $350 for appellee's attorney's fee, and less the costs of suit. The court found that appellee never denied liability, and was at all times ready and able to pay the proceeds of the policy to whomsoever might be entitled to receive them; that in view of Article 21.23 of the Insurance Code, V.A.T.S., appellee could not have paid the proceeds to appellant without risk of double payment; that appellee acted in good faith in withholding the proceeds from appellant, and was not liable for penalties, interest, attorney's fees or costs, but was entitled to recover its own attorney's fee.

Article 21.23 of the Insurance Code reads: "The interest of a beneficiary in a life insurance policy or contract heretofore or hereafter issued shall be forfeited when the beneficiary is the principal or an accomplice in willfully bringing about the death of the insured. When such is the case, the nearest relative of the insured shall receive said insurance."

Article 3.62 of the Insurance Code provides that when an insurer fails to pay within thirty days after demand, it shall be liable for twelve per cent penalties and reasonable attorney's fees.

Proof of death and demand for payment were made in a letter from appellant's attorney to appellee, dated September 1, 1955. On September 9, 1955, appellee wrote appellant's attorney that it understood that appellant had been indicted for the murder of deceased "and it appears we can take no action on the claim until it has been determined if her rights are forfeited under Article 21.23 of the Insurance Code of Texas," and asked to be advised as to developments in the case, and whether the insured was survived by any children.

On September 27, 1955, appellant's attorney wrote appellee in part as follows: "I assume that our relationship is entirely friendly and mutual in that you acknowledge owing the money and are only concerned in protecting your obligations, and that with the least expense and trouble to all concerned, and certainly with the least possible expense to Mrs. Murray. With this in mind, I suggest that I prepare a very formal petition and send you a copy of it without the expense of citation and that you in turn forward your check or draft to the Court to be delivered to Mrs. Murray or to Mr. Murray's heirs, as the Court may decree. Without having checked the authorities it is my opinion that the outcome of the criminal case would not be binding in the civil case and I will finally have to litigate the matter of Mr. Murray's brothers and sisters, and the sooner I get started the sooner it will be disposed of."

On September 30, 1955, appellee wrote appellant's attorney that "Our only problem is determining who the proceeds are payable to and making sure that we completely discharge our obligation without danger of double liability. Our position in this matter is simply that of an impartial stakeholder and we will be ready, willing, and able to pay the proceeds due as soon as all of the parties involved reach an agreement, either amicably or by litigation.

"At the present time, we do not know who is involved in this matter and will appreciate it if you will give us the names of Mr. Murray's nearest relatives and their addresses. If you feel they can reach an agreement with Mrs. Murray, we will be glad to consider payment in accordance with their agreement or we would be willing to pay the proceeds into court and let the court determine their respective rights."

On October 10, 1955, appellant's attorney forwarded a copy of her petition to appellee, and wrote, "Judging from your former correspondence, I assume that you will tender money into the court and implead the brothers and sisters of Otis Carl Murray and without suggesting or insisting that you do so, but solely for your convenience, I enclose herein the names and addresses of such brothers and sisters."

On October 17, 1955, appellee wrote appellant's attorney inquiring of the status of the criminal case, and suggesting that administration be taken out on the deceased's estate, "so that the legal heirs of the decedent can be determined." To that letter appellant's attorney replied on October 20, 1955, that "A Mr. Smith is also indicted and his case is set for November 28th and her case has not been set, but I anticipate no conviction in the Smith case and a dismissal of her case at that time.

"Under our insurance code, should it develop that Mrs. Murray brought about the death of her husband, the proceeds of the policy would be payable to Mr. Murray's nearest relatives and not to his estate. Therefore, it is my opinion that there is no occasion for administration on his estate so far as the proceeds of the policy are concerned, and that since his mother and father are deceased, and he has no child or children, his nearest relatives, being his brothers and sisters, would be entitled to the proceeds."

On October 24, 1955, appellee wrote appellant's attorney that it was not in a position to determine the identity of deceased's nearest relatives, and suggested that the usual procedure was for an estate to be opened and the nearest relatives be determined in the estate proceedings; and that "In view of your statement that the matter of the indictments may come to a head by November 28, 1955, what is your view as to waiting until that time before deciding what further action if any may be necessary?" On October 26, 1955, appellant's attorney wrote appellee that he had no objection to "a status quo attitude until after November 28th."

Appellee filed its answer on November 19, 1955, alleging that it was unable to determine to whom the proceeds of the policy should be paid, and tendered the proceeds into court, "to be paid by said District Clerk, when and if the rightful owner of such proceeds is determined by said Court," and asked for an allowance for attorney's fees.

Appellant's points of error are briefed together, and are: that it was error to overrule her exceptions to appellee's answer; that the court erred in denying appellant recovery for penalties, interest, and attorney's fees; and erred in awarding appellee judgment for attorney's fees and costs.

The exceptions were, in substance, that appellee failed to plead any defense in that it did not allege that appellant was guilty of her husband's death, or that any other person claimed the fund, or that any other person was entitled to the fund, or any facts which, if true, would entitle any other person to the fund, or would place any responsibility on the court to determine its rightful owner.

■ We are of the opinion that all of appellant's points must be overruled. Appellee never denied liability on the policy; and before an insurer may escape payment of penalties, interest, and attorney's fees, we do not think it is necessary in every case that more than one person be actually claiming the fund. The true rule seems to be that regardless of who initiates the suit, where the insurer admits liability, but has reasonable grounds for anticipating rival claims, and in good faith declines to pay the named beneficiary, and deposits the money in court to be paid to the rightful person as determined by the court, it is not liable for more than the face amount of the policy. Southwestern Ins. Co. v. Woods Nat. Bank, Tex.Civ.App., 107 S.W. 114; New York Life Ins. Co. v. Veith, Tex.Civ.App., 192 S.W. 605; Washington Fidelity Nat. Ins. Co. v. Williams, Tex.Com.App., 49 S.W.2d 1093; Preferred Life Ins. Co. v. Stephenville Hospital, Tex. Civ.App., 256 S.W.2d 1006; Security State Bank of Pharr v. Shanley, Tex.Civ.App., 182 S.W.2d 136; Wilke v. Finn, Tex.Com. App., 39 S.W.2d 836; Drane v. Jefferson Standard Life Ins. Co., Tex.Civ.App., 146 S.W.2d 526; Grand Lodge Colored Knights of Pythias of Texas v. Watson, Tex.Civ. App., 145 S.W.2d 601; Whittet v. Reliance Life Ins. Co., Tex.Civ.App., 213 S.W.2d 164; Demmer v. American Nat. Ins. Co., Tex.Civ.App., 263 S.W.2d 795; Texas Life Ins. Co. v. Valley View Nat. Bank, Tex.Civ. App., 44 S.W.2d 1045.

■ It is true that appellee did not allege that appellant killed her husband, or that any other person was entitled to or was claiming the fund; but we think the evidence supports the court's finding that appellee would have run the risk of double payment had it paid the fund to appellant, and that it acted in good faith in paying the money into court and invoking the court's power to determine the rightful owner. It seems that appellant also anticipated rival claims, for her attorney told appellee that "I will finally have to litigate the matter of Mr. Murray's brothers and sisters."

■ Appellee requests that we allow it an attorney's fee of $750 for services after judgment in the trial court, including briefing and argument in this court. In its answer appellee said that it had been compelled to employ attorneys to "file an answer in this cause and to make tender of the amount due under the policy," and that it should recover reasonable attorneys' fees for "services rendered in connection with this suit." An award of $350 was made. Legal services rendered necessary because of the appeal are "in connection with this suit;" and it might with some plausibility be argued that they were covered by that award. Moreover, while we have seen no authorities on the point, we are inclined to the view that the matter of fixing attorneys' fees should in the first instance, be decided in the trial court.

The judgment is affirmed.