Gwendolyn McFARLAND, Appellant,

v.

The FRANKLIN LIFE INSURANCE COMPANY, Appellee.

No. 5766.

Court of Civil Appeals of Texas.

El Paso.

Nov. 9, 1966.

Rehearing Denied Dec. 14, 1966.

Stubbeman, McRae, Sealy & Laughlin and Milton L. Bankston, Midland, for appellant.

Turpin, Smith, Dyer & Hardie, James T. Smith and Sam B. Cobb, Jr., Midland, for appellee.

OPINION

FRASER, Chief Justice.

This is an appeal from a judgment of the District Court of Midland County, Texas which allowed recovery under an insurance policy but did not allow the damages, attorneys' fees and costs of court under the provisions of Article 3.62, Insurance Code of Texas, V.A.T.S.

The appellee issued its policy of insurance on the life of one John V. McFarland on March 2, 1950. At that time the insured was either nine or ten years of age. The policy was taken out by his father, and named the father as beneficiary, if living, or Mrs. Gwendolyn McFarland (the mother) as contingent beneficiary. The original beneficiary predeceased the insured. The insured married about a year or so before his death, which occurred on August 4, 1963, and left surviving him a widow referred to as Mrs. John V. McFarland or "Dana", and his mother, the appellant herein. The appellant, through her attorney, on September 3, 1963, notified appellee of the death of the insured.

Appellant's one point of error is that the trial court erred in refusing to allow her the twelve per cent damages on the proceeds of the policy, together with attorneys' fees and court costs. She petitioned for these items, claiming that appellee was bound to pay same because its actions and/or failures to act made it liable under the provisions of said Article 3.62, Insurance Code of Texas. It appears that after considerable correspondence appellant filed suit against appellee, and appellee filed a bill of interpleader and cross-action against appellant and Mrs. John V. McFarland, the widow of the insured. The widow did not answer the cross-action, and default judgment was taken against her. Appellee paid the proceeds of the policy into the registry of the court.

As stated in the conclusion of her brief, appellant urges that appellee had no right to file an interpleader because it was not confronted by rival claimants; because appellee did not promptly and clearly admit liability and make a bona fide tender of the insurance amount due to the court; and because appellee was not entertained by a reasonable doubt in law or in fact as to whom the company should have paid the proceeds of the policy.

As stated above, appellant, through her attorneys, notified appellee of the death of her son, the insured, on September 3, 1963. It further appears from the record and the court's Findings of Fact that some three days later, to-wit, September 6, 1963, claim forms were sent by appellee to the attorney for appellant; that on October 16, 1963, some five weeks later, appellee wrote the attorney for appellant stating that appellee had not received the completed Proof of Death forms and Policy. Then on October 29, 1963 appellee received a letter from the law office of Warren Burnett, admitted in the record to be a prominent West Texas attorney, stating that they represented the wife of John Vernon McFarland, deceased, and asking for details concerning the amount and the beneficiary of the policy in question. Then, on October 31, 1963, appellee wrote Mr. Alexander, of the Warren Burnett firm, informing him that they had been notified of the death by the attorney for appellant and had sent out the necessary forms to be filled out in order to collect on the policy, and that the beneficiary of the policy was the insured's mother, "Mrs. Gwendolyn McFarland". Then on November 1st, one of appellant's attorneys sent the Proof of Death and Beneficiary's Statement to appellee. On November 12th, appellee sent a letter to the attorney for the widow, Mr. Alexander, along with a copy of same to appellant's attorney, enclosing a release to be signed by the widow of the insured if it was her intention to release any claim she might have to the proceeds of the policy. On January 7, 1964 the attorney for appellant wrote appellee reminding appellee that the Proof of Death and Beneficiary's Statement forms executed by

the mother (beneficiary), had been sent to appellee on November 1st. In this same letter the attorney mentioned the receipt of a copy of the letter to the attorney for the widow. Appellant's attorney then stated as follows: "Regardless of 'your practice' the contract and the law in Texas require that the proceeds of this policy be paid to the beneficiary. Unless your check for the amount due under the policy is received forthwith or, in the alternative, we receive by return mail some valid reason (other than "your practice") for withholding payment thereof, suit will be filed to recover on this policy, as well as attorneys' fees which are authorized for this type of action." On January 10, 1964 appellee replied to the above letter by appellant's attorney, stating that Mr. Alexander, of Mr. Burnett's firm, no longer represented the widow of the insured, and that Mr. Alexander indicated that there should be no problem in obtaining a release from her. The letter then says the necessary forms are enclosed for the signature of the insured's widow, and after a discussion of the manner and amount of payment, appellee states in said letter as follows:

"We agree that as beneficiary Mrs. Gwendolyn McFarland does have an interest in the policy proceeds, but the extent of her interest is certainly questionable under your Community Property Statutes when there is a surviving spouse. Claims of this kind are not infrequent in your state or in other states, where Community Property prevails, and it is seldom that we have a case where it is not determined that some part of the proceeds should go to the spouse. When the spouse is not brought into settlement, it is the opinion of our Legal Counsel that a Release of any interest she might have should be obtained for the Company's protection against additional liability. We have followed this procedure for many years and without any difficulties; in fact, this procedure was discussed with your Texas State Insurance Department

in 1959 without any suggestions for change in it.

"We were at fault in not following this case more closely with Mr. Alexander, and when our check is issued to Mrs. Gwendolyn McFarland, we will include interest at our current rate of deposit at 3½% from November 4, 1963, the date proof of claim was received in this office."

On February 6, 1964 some thirty days after appellant's letter of January 7th, the present suit was filed.

We believe that the decision of the trial court in denying the damages, costs and attorneys' fees under Article 3.62 of the Texas Insurance Code was correct.

■ It has long been elementary that statutes penal in nature must be strictly construed, and this must be kept in mind in dealing with the problem confronting us. Rio Grande Nat. Life Ins. Co. v. Bailey, Tex.Civ.App., 153 S.W.2d 493 (n. w. h.); Whittet v. Reliance Life Ins. Co., Tex.Civ.App., 213 S.W.2d 164. We believe that the language in the case of Murray v. Bankers Life Company, Tex.Civ.App., 299 S.W.2d 730, reaffirmed in Murray v. American National Insurance Company, Tex.Civ.App., 300 S.W.2d 187, is descriptive and decisive of the matter before us. These two cases show that a writ was refused in each— in other words, they are not n. r. e. cases. The language of the court in Murray v. Bankers Life Company, 299 S.W.2d page 733, is as follows:

"We are of the opinion that all of appellant's points must be overruled. Appellee never denied liability on the policy; and before an insurer may escape payment of penalties, interest, and attorney's fees, we do not think it is necessary in every case that more than one person be actually claiming the fund. The true rule seems to be that regardless of who initiates the suit, where the insurer admits liability, but has reasonable grounds for anticipating rival claims, and in good

faith declines to pay the named beneficiary, and deposits the money in court to be paid to the rightful person as determined by the court, it is not liable for more than the face amount of the policy."

Then follows a long list of cases cited by the court, which we will not include in this opinion.

■ It must also be noted that the record shows that before the suit was filed, the appellee was not told that community funds were not used to pay premiums on the policy involved, nor had appellee been informed that appellant could not or would not secure a release from the widow because of the admitted ill-feeling between the two women. The record shows that appellant testified that she and her late husband had always paid all the premiums on the policy in question.

We are therefore faced with a situation, as explained by appellee's letter of January 10, 1964, where apellee had, in the opinion of the trial court, a reasonable fear or apprehension that the widow might have, or would assert, some claim on the proceeds of the policy. This is set forth and discussed in the said letter wherein mention is made of problems arising in Community Property jurisdictions. We agree with such opinion or holding by the trial court.

We do not find that appellee ever denied liability for payment of the proceeds of the policy. The matters alluded to above, to-wit, that the premiums had been paid by the beneficiary, and not the widow, and the bad feeling between appellant and the widow, were brought out at the *trial* of the case held during the September, 1964 term of the court. Therefore, the appellee was, in our opinion, reasonably concerned about a possible claim from the widow of the insured, but did not make a

flat denial of liability; and when suit was filed, did pay the amount due on the policy into the registry of the court. The January 10, 1964 letter from appellee seems to be a reasonable explanation why it had not at that time paid the amount due on the policy, and it must be remembered that the Proof of Death and Beneficiary forms were not sent to the appellee until November 1, 1963. Also, we must consider that although the lawyers for the widow stated that there should be no problem in obtaining a release from her, the same attorneys had also stated that they no longer represented the widow; so that at that time the appellee had only an opinion, and not a promise, and probably did not then know whether the widow would be as willing and acquiescent as her former attorneys thought she might be with regard to signing the necessary release.

■ For the above reasons, we believe that the trial court acted correctly and rendered the right decision. We have carefully examined the record, the Findings of Fact and Conclusions of Law, and find them substantially reasonable and supported by adequate probative evidence. Therefore we must agree with the trial court that the appellee did not act, or fail to act, in any manner sufficient to entitle appellant to the damages, attorneys' fees and costs by virtue of Article 3.62, Insurance Code of Texas. In our opinion the law on this matter depends on whether the appellee was acting in good faith and on reasonable grounds, and does not require the insurance company to act as judge and jury, but only reasonably and upon reasonable grounds. We believe the record here sustains the position of the appellee and the decision of the trial court.

Appellant's point of error is accordingly overruled, and the judgment of the trial court is in all things affirmed.