Gwendolyn McFARLAND, Petitioner,

v.

The FRANKLIN LIFE INSURANCE
COMPANY, Respondent.

No. B–49.

Supreme Court of Texas.

June 7, 1967.

Stubbeman, McRae, Sealy & Laughlin,
Gene L. Jameson and Milton L. Bankston,
Midland, for petitioner.

Turpin, Smith, Dyer, Hardie & Harman,
James T. Smith, Midland, for respondent.

WALKER, Justice.

This appeal involves an asserted right to recover a twelve per cent penalty and attorney's fees under Article 3.62 of the Insurance Code, V.A.T.S.[1] The principal question to be decided is whether The Franklin Life Insurance Company, respondent, had reasonable grounds for anticipating rival claims. We hold that as a matter of law it did not.

In 1950 respondent issued a policy of insurance on the life of John V. McFarland, who was about nine years of age at the time. The policy was taken out by his parents, Bernard and Gwendolyn McFarland, the latter of whom is petitioner here. Bernard was named in the policy as primary beneficiary, and petitioner was designated as contingent beneficiary. John married in 1962 and died the following year. His father predeceased him; he was survived by his widow and petitioner. Petitioner brought this suit against respondent to recover the amount due on the policy plus the statutory penalty and attorney's fees. Respondent interpleaded Mrs. John V. McFarland, admitted liability for the proceeds of the policy, and paid the funds into court. The trial court, sitting without a jury, awarded petitioner the money so deposited but allowed no penalty or attorney's fee, and the Court of Civil Appeals affirmed. 409 S.W.2d 467. The only question brought forward on appeal is whether petitioner is entitled to recover such penalty, attorney's fee and court costs.

■ Article 3.62 is penal in nature and must be strictly construed. Washington Fidelity Nat. Ins. Co. v. Williams, Tex. Com.App., 49 S.W.2d 1093; Note, 9 Baylor L.Rev. 452; 29A Am.Jur. Insurance § 1697; 16 Couch, Insurance, 2d ed. 1966, §§ 58.3, 58.10. See also Annotation, 90 A.L.R. 530;

46 C.J.S. Insurance § 1406; Note, 48 Harvard L.Rev. 319. It is generally held, therefore, that "where the insurer admits liability, but has reasonable grounds for anticipating rival claims, and in good faith declines to pay the named beneficiary, and deposits the money in court to be paid to the rightful person as determined by the court, it is not liable for more than the face amount of the policy." See Murray v. Bankers Life Co., Tex.Civ.App., 299 S.W. 2d 730 (wr. ref.); Murray v. American National Ins. Co., Tex.Civ.App., 300 S.W. 2d 187 (wr. ref.); 3 Appleman, Insurance, 1967 ed., § 1618.

Respondent advances two basic propositions in support of the trial court's judgment: (1) that, in view of a letter received from Mrs. John V. McFarland's attorney and the possibility that she might be entitled to part of the policy proceeds under the community property laws of Texas, it had reasonable grounds for anticipating rival claims; and (2) that petitioner never made demand for payment as contemplated by Article 3.62. The following is a chronology of the relevant correspondence:

*September 3, 1963:* petitioner's attorney notified respondent of John's death.

*September 6, 1963:* respondent sent petitioner's attorney forms for filing the claim.

*October 16, 1963:* respondent notified petitioner's attorney that the completed claim forms had not been received.

*October 29, 1963:* Mrs. John V. McFarland's attorney wrote respondent advising that "we represent the wife of John Vernon McFarland, deceased, and would appreciate details concerning the amount and beneficiary, if any, of Policy No. 884834."

*October 31, 1963:* respondent wrote Mrs. John V. McFarland's attorney that petition-

---

1. "In all cases where a loss occurs and the life insurance company * * * liable therefor shall fail to pay the same within thirty days after demand therefor, such company shall be liable to pay the holder of such policy, in addition to the amount of the loss, twelve (12%) per cent damages on the amount of such loss together with reasonable attorney fees for the prosecution and collection of such loss. * * * *"

er was the beneficiary of the policy and also furnished the name and address of petitioner's attorney.

*November 1, 1963:* petitioner's attorney sent respondent the necessary proofs of death.

*November 12, 1963:* respondent notified Mrs. John V. McFarland's attorney that the proofs of death had been received and requested him to obtain and furnish a release from his client. A copy of this letter was sent to petitioners attorney.

*January 7, 1964:* petitioner's attorney wrote respondent as follows:

"Regardless of 'your practice', the contract and the law in Texas require that the proceeds of this policy be paid to the beneficiary. Unless your check for the amount due under the policy is received forthwith or, in the alternative, we receive by return mail some valid reason (other than 'your practice') for withholding payment thereof, suit will be filed to recover on this policy, as well as attorneys' fees which are authorized for this type of action."

*January 10, 1964:* respondent replied as follows:

"I am sorry for the delay that has occurred under this settlement, but we have been waiting for a reply from Mr. Billy G. Alexander of Odessa who represented the wife of the Deceased. In an effort to hurry along the disposal of the claim funds, I called Mr. Alexander and determined he no longer represents the widow as she recently called him that she had no need for legal counsel since there no longer was any family problems. Mr. Alexander stated it was his understanding the widow was living in your city and indicated we should have no problem in obtaining a Release from her.

"The form is enclosed for her signature, and when received here with the policy, our check payable to Gwendolyn

McFarland will be mailed promptly. The total proceeds amount to * * *.

"If there is any objection to sending the Release and policy direct to us, they may be sent to the Illinois National Bank here in Springfield, and we will exchange the check for these items. Or, if you prefer that we have one of our agents call at your office and pick up the Release and policy in exchange for the check, we shall be glad to make that arrangement.

"We agree that as beneficiary Mrs. Gwendolyn McFarland does have an interest in the policy proceeds, but the extent of her interest is certainly questionable under your Community Property Statutes when there is a surviving spouse. Claims of this kind are not infrequent in your state or in other states, where Community Property prevails, and it is seldom that we have a case where it is not determined that some part of the proceeds should go to the spouse. When the spouse is not brought into settlement, it is the opinion of our Legal Counsel that a Release of any interest she might have should be obtained for the Company's protection against additional liability. We have followed this procedure for many years and without any difficulties; in fact, this procedure was discussed with your Texas State Insurance Department in 1959 without any suggestions for change in it.

"We were at fault in not following this case more closely with Mr. Alexander, and when our check is issued to Mrs. Gwendolyn McFarland, we will include interest * * *."

The present suit was instituted on February 6, 1964, and respondent filed its bill of interpleader and paid the policy proceeds into the registry of the court about four weeks later.

■ An insurance company which knows that rival claimants are actively asserting

their rights is usually held to have reasonable grounds for withholding payment; it will not be subjected to the statutory penalties if the other conditions set out above are satisfied. Drane v. Jefferson Standard Life Ins. Co., 139 Tex. 101, 161 S.W.2d 1057; Demmer v. American National Ins. Co., Tex.Civ.App., 263 S.W.2d 795 (no writ); Grand Lodge Colored K. P. of Texas v. Watson, Tex.Civ.App., 145 S.W. 2d 601 (no writ). That is not, however, the situation here. The October 29th letter from Mrs. John V. McFarland's attorney gave no indication that she intended to claim all or any part of the policy proceeds. It was a mere inquiry—nothing more. Any misgivings about her attitude which the letter may have caused should have been dispelled when respondent was advised that she had dismissed her attorney because there were no more family problems.

█ Petitioner is the beneficiary named in the policy and as such would ordinarily be entitled to the proceeds thereof. See V.A.T.S. Insurance Code, Art. 3.48. In that respect the case differs from Life Ins. Co. of Virginia v. Oldham, Tex.Civ. App., 385 S.W.2d 403 (wr. ref.), and Whittet v. Reliance Life Ins. Co., Tex. Civ.App., 213 S.W.2d 164 (no writ.). There the estate of the insured was the designated beneficiary, and the heirs were demanding payment. It was held that the insurance company was justified in withholding the money until proper authority could be obtained for making payment to the heirs. See also Texas Life Ins. Co. v. Valley View Nat. Bank, Tex.Civ.App., 44 S.W.2d 1045 (no writ).

█ Respondent relies primarily on Murray v. American National Ins. Co., Tex.Civ.App., 300 S.W.2d 187 (wr. ref.), and Murray v. Bankers Life Co., Tex.Civ. App., 299 S.W.2d 730 (wr. ref.). In each of these cases the company knew that the wife of the insured, who was the beneficiary named in the policy, had been charged with murdering her husband. There was thus a reasonable basis for anticipating rival claims, because Article 21.23 of the Insurance Code provides that the nearest relative of the insured shall receive the insurance when the beneficiary has wilfully brought about the death of the insured. In the present case respondent had no information suggesting that the widow was asserting a right under the policy or that payment to the named beneficiary would subject it to a substantial risk of double liability. An investigation, which could have been made during the period of thirty days allowed by Article 3.62, would have disclosed that the policy was taken out while the insured was unmarried and that all premiums were paid by petitioner and her husband. It thus appears that the widow did not have a valid claim, and there was nothing within respondent's knowledge to warrant the belief that she did. Respondent was not justified, therefore, in requiring that petitioner obtain a release from the widow, and petitioner was under no duty to explain her failure to furnish the same. The mere possibility that facts giving rise to an adverse claim could exist does not constitute reasonable grounds for refusing to pay the designated beneficiary.

█ As previously indicated, respondent also contends that petitioner failed to demand payment as required by Article 3.62. The letter of January 7th makes it clear that petitioner was insisting upon payment and would file suit unless respondent had some valid reason for withholding the money other than its practice of requiring a release from the widow. This constitutes a sufficient demand under the statute. See National Life & Accident Ins. Co. v. Dove, 141 Tex. 464, 174 S.W. 2d 245; Republic National Life Ins. Co. v. Beard, Tex.Civ.App., 400 S.W.2d 853 (wr. ref. n. r. e.); 16 Couch, Insurance, 2d ed. 1966, § 58.76.

The judgments of the courts below are reversed, and the cause is remanded to

the district court with instructions to render judgment in petitioner's favor for the amount due under the policy plus the statutory penalty, attorney's fees and court costs.