**J.C. PENNEY LIFE INSURANCE COMPANY, Appellant,**

v.

**Tracinda HEINRICH, Appellee.**

**No. 04–99–00356–CV.**

Court of Appeals of Texas, San Antonio.

Sept. 6, 2000.

Rehearing Overruled Oct. 9, 2000.

Andrew L. Kerr, Mark G. Sessions, Zachary B. Aoki, Jenkins & Gilchrist, P.C., San Antonio, for Appellant.

Charles Estee, Shannon, Drake & Estee, L.L.P., Matthew Edward Sossi, The Whitley-Sossi Law Firm, P.C., Ray Leach, Law Offices of Ray Leach, Richard E.

Langlois, Law Offices of Richard E. Langlois, Daniel O. Kustoff, Lang & Kustoff, L.L.P., Paul D. Taylor, Law Office of Paul Taylor, San Antonio, for Appellee.

Sitting: PHIL HARDBERGER, Chief Justice, CATHERINE STONE, Justice, SARAH B. DUNCAN, Justice.

## OPINION

Opinion by: SARAH B. DUNCAN, Justice.

J.C. Penney Life Insurance Company appeals the trial court's judgment awarding Tracinda Heinrich the proceeds of an insurance policy on the life of her common law husband, Eliseo John Hernandez. We modify the judgment to delete prejudgment interest on the damages awarded pursuant to article 21.55 of the Texas Insurance Code and to condition the award of appellate attorney's fees on a successful appeal. As modified, the judgment is affirmed.

### FACTUAL AND PROCEDURAL BACKGROUND

Heinrich and Hernandez began living together in 1986. According to Heinrich, the couple agreed to be married after their first child was born in 1987. During the following six years, the couple had another child, introduced each other as husband and wife, and filed joint tax returns. In April 1993, Heinrich and Hernandez ceased cohabitating. Hernandez began living with another woman, Christy Byrom; and, on March 16, 1994, he filed for divorce from Heinrich. On April 18, Heinrich responded with her own counter-petition for divorce. In their petitions, Hernandez and Heinrich referred to the other as his or her "common law spouse." While the divorce was pending, Hernandez and Byrom continued to live together and eventually had a child together.

In September of 1994, Hernandez purchased a $100,000 life insurance policy from J.C. Penney. The policy provided that the proceeds would be paid "to [Hernandez'] spouse if living; otherwise equally to [his] then living lawful children, if any,

(including stepchildren and adopted children); otherwise equally to [his] then living parents or parent; otherwise to [his] estate" unless Hernandez specified otherwise. Hernandez did not specify otherwise.

On December 12, 1994, while the divorce proceeding was still pending, Hernandez died. On December 28, 1994, Heinrich commenced an administrative proceeding for Social Security benefits in which she was required to prove her informal marriage to Hernandez. On January 16, Byrom also filed an application for Social Security benefits as his wife. In her statement in the administrative proceeding, Byrom acknowledged that Hernandez and Heinrich were married, and their divorce action was still pending. Byrom also filed a claim with J.C. Penney to the proceeds of Hernandez' life insurance policy.

In response to J.C. Penney's request for documentation, Byrom sent notarized letters from six people, including Hernandez' mother, brother, and friends. Hernandez' mother wrote that Byrom and Hernandez "lived as husband and wife for a period of one year." Hernandez' brother and sister-in-law wrote that "Hernandez acknowledged Christy Byrom as his wife," and Hernandez and Byrom had privately exchanged vows and rings. Two friends of Hernandez' stated that Hernandez and Byrom "were always together as husband and wife" and they "were to be married on New Year [sic] Eve." Another friend stated that when she was in San Antonio on November 13, 1994, Hernandez and Byrom "were excited to inform several close friends that they were going to get married New Years Day—1995." Byrom also sent J.C. Penney a copy of Hernandez' obituary, which referred to her as Hernandez' wife. Finally, Byrom sent a copy of a school enrollment form for one of Hernandez' and Heinrich's children. This form was signed by Hernandez and listed Byrom as the child's stepmother. Based on these documents, J.C. Penney paid Byrom

the insurance proceeds on February 22, 1995.

On March 29, 1995, Heinrich's attorney sent J.C. Penney a letter requesting information about a possible insurance policy on Hernandez' life. J.C. Penney responded the next day, informing Heinrich's attorney that Hernandez had purchased a life insurance policy, but the proceeds had already been paid to Byrom. On May 3, 1995, Heinrich filed a claim to the insurance proceeds. J.C. Penney responded by filing this declaratory judgment action asking the court to declare that Heinrich is not Hernandez' surviving spouse. In the alternative, J.C. Penney asked the court to declare that it was discharged from liability pursuant to article 3.48 of the Texas Insurance Code. Finally, if the court found Heinrich was entitled to the insurance proceeds, J.C. Penney asked the court to render judgment against Byrom for the amount of benefits paid to her. Heinrich answered with a general denial and a counterclaim seeking a declaration that she is Hernandez' surviving spouse and thus entitled to his life insurance benefits. Heinrich also alleged J.C. Penney breached its insurance contract and was liable to her for the $100,000 in insurance proceeds. Finally, Heinrich sought statutory penalties under article 21.55 of the Texas Insurance Code because J.C. Penney delayed processing her claim. In response, J.C. Penney argued that Heinrich was barred from asserting her claim that she was Hernandez' surviving spouse by section 1.91 of the Texas Family Code because she did not seek to prove the marriage until after one year had elapsed since her relationship with Hernandez ended.

On August 26, 1996, Heinrich and Hernandez's mother, acting as Hernandez's personal representative in the divorce action, entered an Agreed Judgment Establishing Marital Relationship. Shortly thereafter, Heinrich moved for partial summary judgment on J.C. Penney's claim that her claims were barred by section 1.91. The trial court granted Heinrich's

motion, and the parties went to trial before the court on their remaining claims. The trial court concluded Heinrich is Hernandez's surviving spouse and thus the beneficiary of the life insurance policy; rejected J.C. Penney's discharge and estoppel defenses; and rendered judgment requiring J.C. Penney to pay Heinrich the $100,000 policy proceeds, $69,041.10 in damages under article 21.55, $40,397.94 in prejudgment interest, $69,698.00 in attorney's fees, and $2,445.63 in court costs. The court also rendered judgment against Byrom. Upon request by J.C. Penney, the trial court entered findings of fact and conclusions of law.

## DISCHARGE

J.C. Penney first argues the trial court erred in concluding that it did not discharge its liability to Heinrich under article 3.48 of the Texas Insurance Code when it paid the policy proceeds to Byrom. We disagree.

### Standard of Review

J.C. Penney does not challenge the trial court's finding that Heinrich and Hernandez were married on the date of his death. Instead, it challenges the trial court's conclusion of law that payment of the policy proceeds to Byrom does not discharge it from liability to Heinrich under article 3.48 of the Texas Insurance Code. We review conclusions of law de novo. *Hitzelberger v. Samedan Oil Corp.*, 948 S.W.2d 497, 503 (Tex.App.—Waco 1997, pet. denied); *Piazza v. City of Granger*, 909 S.W.2d 529, 532 (Tex.App.—Austin 1995, no writ).

### Discussion

■ J.C. Penney argues its payment of the policy proceeds to Byrom, in a good faith belief she was the designated beneficiary, discharges it from liability to Heinrich under article 3.48 of the Texas Insurance Code. Article 3.48 provides in part:

Whenever any person shall procure the issuance of a policy of insurance on his or her life in any legal reserve life insur-

ance company, and designate in writing filed with the company the beneficiary to receive the proceeds thereof, the company issuing such policy shall, in the absence of the receipt by it of notice of an adverse claim to the proceeds of the policy from one having a bona fide legal claim to such proceeds or a part thereof, pay such proceeds becoming due on the death of the insured to the person so designated as beneficiary, and such payment so made, in the absence of such notice received by the insurance company prior to the date of the payment of the proceeds, shall discharge the company from all liability under the policy.

TEX. INS.CODE ANN. art. 3.48 (Vernon Supp. 1999). We interpret this statute according to its literal wording unless there is an obvious error in the statute or "application of the literal language ... would produce an absurd result." *Fleming Foods of Texas, Inc. v. Rylander*, 6 S.W.3d 278, 284 (Tex.1999). On its face, article 3.48 does not provide that a good faith payment to someone other than the designated beneficiary discharges an insurer's liability. *See* TEX. INS.CODE ANN. art. 3.48. Only a payment "to the person so designated as beneficiary" operates as a discharge. *Id.* However, J.C. Penney argues a good faith exception should be read into the statute to effectuate its underlying purpose to promote prompt payment of claims and to protect insurers from multiple payments. This is an issue of first impression in Texas.[1] In support of its argument, therefore, J.C. Penney cites case law from other jurisdictions.[2] We are sympathetic to J.C. Penney's argument. As the Fourth Circuit has stated in construing the West Virginia equivalent of article 3.48:

Ivy argues that since (according to his evidence) Unionmutual paid the wrong person under the contract, it is not entitled to the statutory protection. This construction of that language would render Section 33–6–2 a nullity. It would provide protection only to an insurer that already had a complete contractual defense.

*Rogers v. Unionmutual Stock Life Ins. Co.*, 782 F.2d 1214, 1216 (4th Cir.1986). But we are also mindful of Heinrich's contractual right to the policy proceeds. Under these circumstances, if a good faith exception is to be recognized, we believe it is the prerogative of the Texas Supreme Court. We therefore hold the trial court correctly concluded J.C. Penney's good faith payment to Byrom does not discharge it from its contractual liability to Heinrich.

## ESTOPPEL

■ J.C. Penney next challenges the legal and factual sufficiency of the evidence to support the trial court's findings underpinning its rejection of J.C. Penney's estoppel defense. According to J.C. Penney, the evidence establishes Heinrich was aware of the J.C. Penney policy (or knowledge should be imputed to her) in early February 1995—before J.C. Penney paid the policy proceeds to Byrom; Heinrich knew Hernandez and Byrom had a child together; and Heinrich knew shortly after Hernandez's death that Byrom claimed to be his surviving spouse. Under these circumstances, J.C. Penney argues, Heinrich is equitably estopped from claiming the policy proceeds. We disagree.

---

1. J.C. Penney cites *Daniels v. Grand Lodge*, 62 S.W.2d 548 (Tex.Civ.App.-Galveston 1933, writ dism'd). However, in *Daniels*, the insurer paid the designated beneficiary. *Daniels*, 62 S.W.2d at 548.

2. *See Rogers v. Unionmutual Stock Life Ins. Co.*, 782 F.2d 1214, 1216 (4th Cir.1986); *Crosby v. Crosby*, 785 F.Supp. 1227, 1228–29

(D.Md.1992), *aff'd*, 986 F.2d 79, 83 (4th Cir. 1993); *Weed v. Equitable Life Assur. Soc. of the U.S.*, 288 F.2d 463, 464 (5th Cir.), *cert. denied*, 368 U.S. 821, 82 S.Ct. 40, 7 L.Ed.2d 27 (1961); *Atkins v. Security Connecticut Life Ins. Co.*, 1998 WL 900057 (Tenn.Ct.App. 1998); *Avondale v. Sovereign Camp W.O.W.*, 134 Neb. 717, 279 N.W. 355, 359–60 (1938).

### Standard of Review

Estoppel is an affirmative defense upon which J.C. Penney bore the burden of pleading and persuasion. TEX.R. CIV. P. 94; *Barfield v. Howard M. Smith Co. of Amarillo*, 426 S.W.2d 834, 838 (Tex.1968). Therefore, to resolve J.C. Penney's legal sufficiency complaint, we must first review only the evidence supporting the adverse findings. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex.1989). If there is no evidence to support the adverse findings, we must then review the entire record to determine whether the contrary position is established as a matter of law. *Id.* To resolve J.C. Penney's factual sufficiency complaint, we review the entire record to determine whether the finding is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Swate v. Medina Community Hosp.*, 966 S.W.2d 693, 697 (Tex.App.—San Antonio 1998, pet. denied).

### Discussion

■ When asserting the affirmative defense of equitable estoppel, a defendant must prove: "(1) a false representation or concealment of material facts; (2) made with knowledge, actual or constructive, of those facts; (3) with the intention that it should be acted on; (4) to a party without knowledge or means of obtaining knowledge of the facts; (5) who detrimentally relies on the representations." *Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 515 (Tex.1998). Estoppel may be based on a person's silence only "where a person is under a duty to another to speak, but refrains from doing so and thereby leads the other to act in reliance on a mistaken understanding of the facts." *Storms v. Tuck*, 579 S.W.2d 447, 452 (Tex.1979).

The trial court found that "[a]t no time prior to March 30, 1995, did Tracy Heinrich know that John Hernandez had purchased the J.C. Penney life insurance policy, No. 74AK237419, designating his surviving spouse as his beneficiary." At best, the evidence as to Heinrich's knowledge of the policy is conflicting. At trial, she testified she first knew there was a life insurance policy in late March. But she testified on deposition that Byrom may have told her of an insurance policy in February. Byrom testified she did not reveal the existence of the policy to Heinrich. There is thus some evidence Heinrich was not aware of the policy before J.C. Penney paid the policy proceeds to Byrom. And we cannot say, based on this record, the evidence is so contrary to the trial court's finding as to render it manifestly unjust.

■ However, citing *Champlin Oil & Refining Co. v. Chastain*, 403 S.W.2d 376 (Tex.1965), J.C. Penney argues knowledge of the policy should be imputed to Heinrich. We disagree. Although " '[m]eans of knowledge with the duty of using them are in equity equivalent to knowledge itself,' " *id.* at 388–89 (quoting *Hexter v. Pratt*, 10 S.W.2d 692, 693 (Tex. Comm'n App.1928, judgm't adopted)), a successful invocation of this principle rests upon a showing of circumstances sufficient to generate inquiry. *See id.* And the only circumstance that might have caused Heinrich to inquire about a life insurance policy was knowledge of the policy itself. We therefore hold the trial court did not err in concluding Heinrich is not estopped to claim the policy proceeds.

### LIMITATIONS

■ J.C. Penney next argues the trial court erred in granting a partial summary judgment against it on its claim that section 1.91 of the Texas Family Code bars Heinrich from asserting her common law marriage to Hernandez. We disagree.

### Standard of Review

We review a summary judgment de novo. *See Valores Corporativos, S.A. de C.V. v. McLane Co., Inc.*, 945 S.W.2d 160, 162 (Tex.App.—San Antonio 1997, writ denied). We will uphold a summary judg-

ment only if the summary judgment record establishes there is no genuine issue of fact and the movant is entitled to judgment as a matter of law. *Id.;* TEX.R. CIV. P. 166a(c). In conducting this review, we view as true all evidence favorable to the non-movant and indulge every reasonable inference, and resolve all doubts, in its favor. *Nixon v. Mr. Property Mgmt. Co.,* 690 S.W.2d 546, 548–49 (Tex.1985).

### Discussion

As it existed at the time this suit was filed, section 1.91 of the Texas Family Code required "[a] proceeding in which a marriage is to be proved under this section must be commenced not later than one year after the date on which the relationship ended or not later than one year after September 1, 1989, whichever is later." Act of June 2, 1969, 61st Leg., R.S., ch. 888, § 1, sec. 1.91(b), 1969 Tex. Gen. Laws 2707, 2717, *amended by* Act of May 29, 1989, 71st Leg., R.S., ch. 369, § 9, 1989 Tex. Gen. Laws 1458, 1461. In construing this statute, our objective is to ascertain and give effect to the underlying legislative intent. *Texas Water Comm'n v. Brushy Creek Mun. Util. Dist.,* 917 S.W.2d 19, 21 (Tex.1996). When the language is clear and unambiguous, legislative intent may be determined from the plain and ordinary meaning of the words used. *Albertson's, Inc. v. Sinclair,* 984 S.W.2d 958, 960 (Tex.1999). But even if the statute is unambiguous, we may consider the legislature's objective, the consequences of particular constructions of the statute, and any administrative constructions. TEX. GOV'T CODE ANN. § 311.023 (Vernon 1998); *see Atascosa County v. Atascosa County Appraisal Dist.,* 990 S.W.2d 255, 258–59 (Tex.1999).

It is undisputed Hernandez filed a divorce petition within one year of the month in which he and Heinrich ceased cohabiting. *See Georgiades v. Di Ferrante,* 871 S.W.2d 878, 881 (Tex.App.—Houston [14th Dist.] 1994, writ denied); *Riley v. State,* 849 S.W.2d 901, 902–03 (Tex.App.—Austin 1993, pet. ref'd); *White v. State Farm Mut. Auto. Ins. Co.,* 907 F.Supp. 1012, 1017 (E.D.Tex.1995); Joseph W. McKnight, *Annual Survey of Texas Law, Part 1: Private Law, Family Law: Husband and Wife,* 44 Sw. L.J. 1, 3 (1990) (relationship ends when the parties cease cohabitating). However, J.C. Penney argues Hernandez's divorce action does not satisfy section 1.91, because it did not attempt to establish a common law marriage. We disagree. An attempt to establish a common law marriage is implicit in filing a divorce action and referring to Heinrich as his "common law spouse."

Because Hernandez's divorce action sought to establish a common law marriage as a prerequisite to obtaining a divorce and was filed within one year of the end of the relationship, Hernandez's action meets section 1.91's plain and unambiguous terms. J.C. Penney argues, however, "merely instituting the proceeding does not satisfy the requirements of [section 1.91]"; "[a] determination of the marriage must result." For this proposition, J.C. Penney cites *Mossler v. Shields,* 818 S.W.2d 752, 754 (Tex.1991) (per curiam).

In *Mossler,* Tammy Shields' divorce petition seeking to establish a common law marriage was dismissed with prejudice. *Id.* at 753. Shields then relocated and, more than a year after the relationship ended, refiled her petition in her new county of residence. *Id.* The trial court entered summary judgment against Shields in her second divorce action. *Id.* The supreme court held the first dismissal was a determination on the merits and thus the summary judgment was not precluded by public policy. *Id.* at 754. As support for its holding, the court noted that the Texas Legislature's amendment of section 1.91 indicated "its approval of barring such claims in certain situations...." *Id.* At no point did the court construe section 1.91 or otherwise indicate that merely filing a proceeding was insufficient to comply with the statute. *Mossler* thus does not support J.C. Penney's argument.

Nor are we aware of any other authority that does. We therefore hold that section 1.91 requires only that a proceeding be commenced, as long as there has been no determination on the merits of the proceeding that no common law marriage existed, and further that the trial court did not err in concluding Heinrich's action is not barred by section 1.91 of the Texas Family Code.

### TEXAS INSURANCE CODE ARTICLE 21.55 DAMAGES AND FEES

■ J.C. Penney argues the trial court erred in concluding that Heinrich was entitled to damages and fees under article 21.55 of the Texas Insurance Code. We again disagree.

Under article 21.55, an insurer is required to acknowledge the receipt of a claim, commence an investigation of the claim, and request all items required from the claimant not later than fifteen days after the receipt of notice of a claim. TEX. INS.CODE ANN. art. 21.55, § 2 (Vernon Supp.1999). If the insurer fails to meet this or any other requirement of article 21.55, it is liable for "18 percent per annum of the amount of such claim as damages, together with reasonable attorney fees." *Id.* § 6.

The trial court found that J.C. Penney failed to respond to Heinrich's May 3, 1995 claim and, as a result, concluded that Heinrich was entitled to article 21.55 damages and attorney's fees. J.C. Penney does not challenge the sufficiency of the evidence to support this finding. Rather, J.C. Penney argues it should be excepted from application of article 21.55, section 6.

J.C. Penney first argues it is not liable under article 21.55, because Heinrich's delay in claiming the policy proceeds deprived it of the opportunity to file an interpleader action. However, J.C. Penney cites no authority for its argument, and we are aware of none. J.C. Penney also argues it cannot be liable under article 21.55, because it never generally denied liability for the policy proceeds. For this proposi-

tion, J.C. Penney cites *Whittet v. Reliance Life Ins. Co. of Pittsburgh,* 213 S.W.2d 164 (Tex.Civ.App.—San Antonio 1948, no writ), and *Life Ins. Co. of Virginia v. Oldham,* 385 S.W.2d 403 (Tex.Civ.App.—Amarillo 1964, writ ref'd).

In *Whittet,* the proceeds of the life insurance policy were payable to the executors, administrators, or assigns of the insured, and neither an executor nor an administrator had been appointed when the insured's heirs demanded payment of the proceeds. *Id.* at 164. The insurer thus promised to pay the proceeds to the executor or administrator as soon as one was appointed or when a court ordered payment to another person. *Id.* at 164–65. The court held the insurer was not liable for article 21.55 damages:

> [I]n the absence of a general denial of liability, an insurance company is not liable for the payment of the penalties and attorney's fees provided for by [the predecessor of article 21.55, section 6], because of its insistence that a proper court order be secured before payment of the proceeds of an insurance policy is made to the heirs of the insured, when the policy expressly provides for payment to the executor, administrator or assigns of the insured.

*Id.* at 166. The *Whittet* Court thus held an insurer who delayed payment to persons not designated until permitted to do so by a court order is not liable under article 21.55. *Id.* The *Oldham* court, faced with "uniquely similar" facts to *Whittet,* relied on the *Whittet* holding as controlling. *Oldham,* 385 S.W.2d at 405. But J.C. Penney paid the proceeds to a person not designated a beneficiary—Byrom—without obtaining a court order to do so and then denied liability to the designated beneficiary. Under these circumstances, we do not believe *Whittet* and *Oldham* apply. Furthermore, we are unable to find any authority for the proposition that simply failing to generally deny liability will relieve an insurer of its liability under

article 21.55. *See Cross v. John Hancock Mut. Life Ins. Co.,* 722 S.W.2d 759, 761 (Tex.App.—Houston [14th Dist.] 1986, no writ) (while insurer never denied liability, it was still liable for penalty when it failed to acknowledge liability, attempt to settle the claim, or file an interpleader); *cf. Texas Life Ins. Co. v. Valley View Nat'l Bank,* 44 S.W.2d 1045, 1049 (Tex.Civ. App.—Fort Worth 1931, no writ) ("To give rise to a cause of action against a life insurance company for the statutory penalty and attorneys' fees under article 4736, Revised Civil Statutes, for failure to pay a loss within thirty days after demand, it must appear that the failure to pay the loss was a denial of the insurance company that it owed the amount of the policy to the claimant.")

### PREJUDGMENT INTEREST ON ARTICLE 21.55 DAMAGES

J.C. Penney next argues the trial court erred in awarding prejudgment interest on the article 21.55 damages. We agree.

#### *Standard of Review*

■■■ We review a trial court's award of prejudgment interest under the abuse of discretion standard. *European Crossroads' Shopping Center, Ltd. v. Criswell,* 910 S.W.2d 45, 55 (Tex.App.—Dallas 1995, writ denied). Under this standard, we will not disturb a trial court's findings on factual issues unless the court reasonably could have reached only one decision and it failed to do so. *Walker v. Packer,* 827 S.W.2d 833, 839–40 (Tex.1992). However, "a trial court has no discretion in determining what the law is or applying the law to the facts." *Id.* at 840.

#### *Discussion*

■■ Prejudgment interest may be awarded on actual damages, but it may not be assessed on an award of exemplary or punitive damages. TEX. CIV. PRAC. & REM. CODE ANN. § 41.007 (Vernon 1997); *Cavnar v. Quality Control Parking, Inc.,* 696 S.W.2d 549, 555–56 (Tex.1985); *Texas*

*Farmers Ins. Co. v. Cameron,* 24 S.W.3d 386, 398 (Tex.App.—Dallas 2000, no pet. h.).

Heinrich argues the trial court properly awarded prejudgment interest because the penalty provided by article 21.55, section 6 of the Texas Insurance Code is classified "as damages." TEX. INS.CODE ANN. art. 21.55, § 6; *see Bekins Moving & Storage Co. v. Williams,* 947 S.W.2d 568 (Tex. App.—Texarkana 1997, no writ). However, the purpose underlying article 21.55 damages is to ensure prompt payment of insurance claims by penalizing the insurer when the insurer fails to follow the steps required by the article. TEX. INS.CODE ANN. art. 21.55, § 8. Because the award is designed to penalize the insurer without reference to harm suffered by the insured or claimant, it is akin to exemplary damages, not actual damages. *Cameron,* 24 S.W.3d at 398; *see Owens–Corning Fiberglas Corp. v. Malone,* 972 S.W.2d 35, 39–40 (Tex.1998); *Box v. Flynn,* 870 S.W.2d 585, 596 (Tex.App.—San Antonio 1993, no writ). We therefore hold the trial court erred in awarding prejudgment interest on the article 21.55, section 6 damages. *See Cameron,* 24 S.W.3d at 398; *Dunn v. Southern Farm Bureau Cas. Ins. Co.,* 991 S.W.2d 467, 478–79 (Tex.App.—Tyler 1999, pet. denied); *see also Teate v. The Mutual Life Ins. Co. of New York,* 965 F.Supp. 891, 894–95 (E.D.Tex.1997); *Marineau v. General American Life Ins. Co.,* 898 S.W.2d 397, 405 (Tex.App.—Fort Worth 1995, writ denied).

### APPELLATE ATTORNEY'S FEES

J.C. Penney also argues the trial court erred in failing to condition the award of appellate attorney's fees on a successful appeal. We again agree.

#### *Standard of Review*

■■■ We review a trial court's award of appellate attorney's fees under the abuse of discretion standard. *In re Ford Motor Co.,* 988 S.W.2d 714, 721 (Tex.1998).

### Discussion

■ "[A]ny award of attorney's fees on appeal must be conditioned on the receiving party's success." *Westech Eng'g, Inc. v. Clearwater Constructors, Inc.,* 835 S.W.2d 190, 205 (Tex.App.—Austin 1992, no writ); *see Stable Energy, L.P. v. Newberry,* 999 S.W.2d 538, 557 (Tex.App.—Austin 1999, pet. denied).

■ Here, the trial court awarded Heinrich "$10,000.00 as reasonable attorney's fees if this case is appealed to the Court of Appeals and $6000.00 for reasonable attorney's fees if this case is appealed to the Texas Supreme Court." The court thus abused its discretion in failing to condition the award of appellate attorney's fees on a successful appeal. However, contrary to J.C. Penney's argument, this error does not require reversal. "Rather, we modify the trial court's judgment to condition the award of attorney's fees on appeal to [Heinrich's] success on appeal." *Westech,* 835 S.W.2d at 205; *Stable Energy,* 999 S.W.2d at 557.

### ATTORNEY AD LITEM FEES

■ Finally, J.C. Penney argues the trial court erred in assessing attorney ad litem fees against it, because Heinrich, as the successful plaintiff, should bear these fees. We disagree.

### Standard of Review

■ We review a trial court's award of attorney ad litem fees under the abuse of discretion standard. *See Simon v. York Crane & Rigging Co.,* 739 S.W.2d 793, 794 (Tex.1987).

### Discussion

■ Under section 37.009 of the Texas Civil Practice and Remedies Code, in any declaratory judgment proceeding, the trial court "may award costs and reasonable and necessary attorney's fees as are equitable and just." TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (Vernon 1997). Thus, the trial court may award fees to a nonpre-vailing party as long as the award is equitable and just.

J.C. Penney does not argue the trial court's award of attorney's fees was not equitable or just. Moreover, at trial, J.C. Penney's objected to the trial court's award of the ad litem fees against it "because ... we're asking the Court to award [ad litem fees] against Ms. Byrom. She would actually be the true non-prevailing party." J.C. Penney's trial objection thus does not comport with its argument on appeal. *See* TEX.R.APP. P. 33.1(a); *Samco Props., Inc. v. Cheatham,* 977 S.W.2d 469, 478–79 (Tex.App.—Houston [14th Dist.] 1998, pet. denied). Therefore, we hold the trial court did not abuse its discretion in assessing the ad litem fees against J.C. Penney. *District Judges of Collin County v. Commissioners Court of Collin County,* 677 S.W.2d 743, 746 (Tex.App.—Dallas 1984, writ ref'd n.r.e.).

### CONCLUSION

The trial court correctly rendered judgment against J.C. Penney for the policy proceeds, damages under article 21.55, and attorney ad litem fees. However, the trial court erred in assessing prejudgment interest on the article 21.55 damages and in failing to condition the award of appellate attorney's fees on Heinrich's success on appeal. We therefore modify the trial court's judgment to delete the award of prejudgment interest on the article 21.55 damages and to condition the award of appellate attorney's fees to Heinrich upon her success on appeal. As modified, the judgment is affirmed.

Concurring opinion by: PHIL HARDBERGER, Chief Justice.

PHIL HARDBERGER, Chief Justice, concurring.

I concur with all of the majority's opinion except the modification of the trial court's judgment to condition the award of appellate attorneys' fees to Heinrich being successful on appeal. The trial court did

err in failing to condition the award of appellate attorney's fees. But this appeal is decided with this opinion. Heinrich was successful; J.C. Penney was unsuccessful. The error is harmless. *See Texas Farmers Ins. Co. v. Cameron*, 24 S.W.3d 386, 400 (Tex.App.—Dallas Feb. 29, 2000, no pet. h.); *Humble Nat'l Bank v. DCV, Inc.*, 933 S.W.2d 224, 236 (Tex. App.—Houston [14th Dist.] 1996, writ denied). Accordingly, I would find no reversible error in the trial court's failure to condition the award of appellate attorney's fees on Heinrich's success in this court. *See Cameron*, 24 S.W.3d 386, 400; *Humble Nat'l Bank*, 933 S.W.2d at 236.

Heinrich ultimately will receive the award of $10,000 in attorney's fees based on the appeal to this court as the majority's opinion and judgment are written, provided that the majority's opinion and judgment are not reversed on further appeal. Therefore, I concur in the majority's opinion as it relates to those fees. I join the majority opinion in modifying the trial court's judgment as it relates to the unconditional award of attorney's fees on appeal to the Texas Supreme Court.