COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-08-129-CV

 

 

JOEL A. RAMSEY AND                                                       APPELLANTS

MARLA K. RAMSEY

 

                                                   V.

 

JAMES R. SPRAY AND                                                          APPELLEES

MARIANNE SPRAY

 

                                              ------------

 

            FROM THE 362ND
DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------








In five issues, appellants Joel A. and Marla K.
Ramsey appeal the award of damages to appellees James R. and Marianne Spray on
the Sprays= 
Deceptive Trade Practices‑Consumer Protection Act (DTPA) claim
arising from the sale and purchase of a house. 
We affirm in part, reverse and render in part, and reverse and remand in
part for further proceedings consistent with this opinion.

I.    
BACKGROUND

In 2002, appellants Joel A. and Marla K. Ramsey
decided to sell their house in Flower Mound, Texas, and hired Sharon Hodnett of
Keller Williams/DFW as their agent. 

More than ten months before entering into a
contract for sale of their house to James R. and Marianne Spray, the Ramseys
completed a sellers= disclosure notice.  Approximately five months before the sale
closed on May 23, 2003, the Ramseys discovered water damage in the kitchen
caused by a leaky roof.  The Ramseys,
however, did not supplement or amend their sellers=
disclosure notice to reflect the house=s faulty
roof or the water damage.  The Sprays= home
inspector, James Wood, identified various minor needed repairs but did not
identify any water damage or a faulty roof. 








After purchasing the house, the Sprays began to
experience problems associated with water penetration due to the house=s faulty
roof.  Mrs. Spray discovered standing
water in one of the kitchen drawers in approximately July 2003.  In December 2003, the Sprays hired a
contractor to investigate and fix the problem. 
The contractor found multiple leaks due to improper roof
installation.  The leaks resulted in
water damage throughout the house, including damaged roof decking, exterior
wall studs, interior walls, and wooden flooring.  The total cost to repair the damage to the
house was $190,445.70. 

The Sprays sued the Ramseys, Hodnett, Keller
Williams/DFW, and Wood for negligence, fraud, breach of warranty, violations of
the DTPA, and unconscionable or knowing conduct.  The Sprays sought judgment against all defendants
Ajointly
and severally@ for actual, exemplary,
punitive, statutory, treble, and mental anguish damages, attorney=s fees,
interest, and costs. 

On November 3, 2006, the Sprays settled and
released all claims with Hodnett, Keller Williams/DFW, and Wood for a
collective amount of $400,000. 

The case proceeded to trial against the Ramseys
on May 21, 2007.  During trial, the
Ramseys introduced the settlement agreement for the purpose of obtaining a
settlement credit, and it was admitted without objection. 

The jury returned a verdict finding the Ramseys
liable for fraud and DTPA violations. 
The jury awarded the Sprays $200,000 actual damages for the costs of
repair to the house, mental anguish damages of $100,000 each,  $2,000,000 in Aadditional@
damages,[2]  and $50,000 in attorney=s fees
through trial. 








On December 21, 2007, the trial court rendered
final judgment on the DTPA verdict, awarding the Sprays $190,445.70 in actual
damages, $571,337.10 in Aadditional@
damages,[3]
$100,000 each to the Sprays for mental anguish, plus attorney=s fees,
interest, and costs.  After judgment was
rendered, the Ramseys filed a motion for new trial, asserting, among other
complaints, that the trial court erred by not applying the $400,000 settlement
amount as a credit against the damages award and by awarding Aexcessive@ actual
damages.  The motion for new trial was
overruled by operation of law.  This
appeal followed.

II.     ISSUES

The
Ramseys bring the following five issues on appeal:

1)     The trial court abused its discretion by failing to apply as a
settlement credit against the damages award the $400,000 that the Sprays
received in settlement from Hodnett, Keller Williams/DFW, and Wood.

2)     The
trial court erred by awarding as additional damages under the DTPA four times
the amount of actual damages.








3)     The
trial court erred in calculating pre- and post-judgment interest, resulting in
an excessive and usurious interest award.

4)     The
Sprays= awards
of mental anguish damages are not supported by legally sufficient evidence.

5)     The
actual damages award is not supported by legally or factually sufficient
evidence because it includes $15,000 in repair costs that are unrelated to the
Sprays= DTPA
claims.

III.     SETTLEMENT CREDIT

In their first issue, the
Ramseys complain that the trial court abused its discretion by failing to
credit against the damages award the $400,000 the Sprays received in
settlement. 

A.     Standard of Review








A trial court=s
determination of the existence or amount of a settlement credit is reviewed for
an abuse of discretion.[4]  To determine whether a trial court abused its
discretion, we must decide whether the trial court acted without reference to
any guiding rules or principles; in other words, we must decide whether the act
was arbitrary or unreasonable.[5]  An appellate court cannot conclude that a
trial court abused its discretion merely because the appellate court would have
ruled differently in the same circumstances.[6]

An abuse of discretion does not occur when the
trial court bases its decisions on conflicting evidence.[7]  Furthermore, an abuse of discretion does not
occur as long as some evidence of substantive and probative character exists to
support the trial court=s decision.[8]

B.     Law Governing Settlement
Credits

Texas Civil Practice and
Remedies Code Chapter 33 governs settlement credits in all tort and DTPA actions.[9]  Section 33.012(b) of the code provides:

If the claimant has
settled with one or more persons, the court shall further reduce the amount of
damages to be recovered by the claimant with respect to a cause of action by
the sum of the dollar amounts of all settlements.[10]








This statute is mandatory.[11]  Because section 33.012(b) calls for
settlement credits to apply to Adamages
to be recovered by the claimant,@ the
credit is applied to the amount of damages awarded in the judgment, not the
amount of damages found by the jury.[12]

A nonsettling defendant has the burden to prove
the existence and amount of a settlement credit, and may do so by placing the
settlement agreement or some other evidence of the settlement amount in the
record.[13]  The burden then shifts to the plaintiff to
show that all or a portion of this settlement amount should not be credited.[14]








A nonsettling defendant is not entitled to credit
for amounts paid to settle punitive damages claims.[15]  To reduce a settlement credit on this basis,
however, it is the plaintiff=s burden
to tender a valid settlement agreement that allocates between actual and
punitive damages.[16]  If the plaintiff does not satisfy this
burden, then the nonsettling party is entitled to full settlement credit.[17]








In addition, the nonsettling defendant may only
claim a credit based on the damages for which all tortfeasors are jointly
liable.[18]  However, if settlement monies were also paid
on claims for which there is no joint and several liability, it is the
plaintiff=s burden to establish any
reduction in a settlement credit by tendering a settlement agreement that
allocates the settlement amount between sole and joint liability claims.[19]  Otherwise, the nonsettling defendant is
entitled to the full credit.[20]

C.     Application of the
Settlement Credit

The Ramseys assert that the trial court abused
its discretion by failing to reduce the judgment award by the entire $400,000
amount that the Sprays received in settlement. 
In response, the Sprays contend that the court did apply the $400,000
settlement credit by reducing the jury=s
$2,000,000 Aadditional@ damages
award to $571,337.10.  The trial court=s
judgment, however, states that the additional damages award was made Apursuant
to the terms of the [DTPA].@[21]  There is no evidence in the record that the
damages were reduced, as the Sprays contend, as a result of the trial court=s
application of settlement credit.








In the alternative, the Sprays contend that the
Ramseys are not entitled to have the $400,000 settlement credit applied against
the additional damages because they are punitive in nature and the Ramseys and
settling defendants are not jointly and severally liable for punitive
damages.  It is well settled, however,
that Aany
credit for settlements made by other alleged joint tortfeasors must be
applied[, if at all,] after the trebling of actual damages.@[22] 

Moreover, the Sprays did not meet their burden of showing that the
settlement agreement allocated dollars toward the settlement of punitive
damages or claims for which the settling defendants and the Ramseys were not
jointly and severally liable.[23]  Because this burden was not met, the Sprays
are not entitled to a reduction of settlement credit.[24]

We hold that the trial court abused its
discretion by failing to apply the $400,000 settlement credit against the
economic damages awards.  We sustain the
Ramseys= first
issue.








IV.     TREBLE DAMAGES

In their second issue, the
Ramseys contend that the trial court abused its discretion by awarding the
Sprays four times, rather than three times, the amount of their economic
damages under the DTPA.[25]  Section 17.50(b)(1) of the Texas Business and
Commerce Code permits a maximum award of three times the amount of economic
damages for a knowing DTPA violation, providing:

(b) In a suit filed under
this section, each consumer who prevails may obtain:

(1) the amount of
economic damages found by the trier of fact. If the trier of fact finds that
the conduct of the defendant was committed knowingly, the consumer may also
recover damages for mental anguish, as found by the trier of fact, and the
trier of fact may award not more than three times the amount of economic
damages.[26]








When a trial court awards actual damages on a
DTPA claim and, in addition, awards three times that amount based on the jury=s award
of Aadditional@ damages
for a knowing DTPA violation, the result is an award of four times the damages
amount.[27]  In such cases, the appellate court should modify
the judgment Ato limit the DTPA award to three
times the amount of economic damages.@[28]

In this case, the trial court entered judgment
awarding the Sprays $190,445.70 in actual economic damages plus three
times that amount, or $571,337.10.  As a
result, the trial court awarded the Sprays four times the amount of their
economic damages.  Accordingly, we hold
that the trial court abused its discretion by awarding the Sprays more than
three times the amount of their economic damages on their DTPA claim based on the
Ramseys= knowing
DTPA violations.[29]  We sustain the Ramseys= second
issue.








V.     AWARD OF PRE- AND POST-JUDGMENT INTEREST








In their
third issue, the Ramseys complain of the award of pre- and post-judgment
interest on four distinct grounds, three of which are waived because they were
not preserved in the trial court.[30]  The only ground that was preserved was
whether the trial court erred by awarding three times the amount of prejudgment
interest on the Sprays= actual damages.

A.     Standard of Review

We apply an abuse of discretion standard to
review the trial court=s award of prejudgment interest.[31]  Under this standard, we will not disturb a
trial court=s findings on factual issues
unless the court reasonably could have reached only one decision and it failed
to do so.[32]  However, A[a]
trial court has no >discretion= in
determining what the law is or applying the law to the facts.@[33]  Accordingly, the abuse of discretion standard
applies to the trial court=s
factual findings as they relate to prejudgment interest; but the de novo
standard applies to the trial court=s
application of the law to the facts.[34]








B.     Prejudgment
Interest and Treble Damages Under the DTPA

Section 17.50(b)(1) of the Texas
Business and Commerce Code permits only economic damages to be trebled on DTPA
claims.[35]  Section 17.50(e) states that Aprejudgment
interest may not be considered@ in
computing such damages.[36]  When a trial court calculates Aadditional@ damages
under section 17.50(b), the amount of the Aadditional
damages@ Ais to be
based upon the actual damages only, not actual damages plus prejudgment
interest.@[37]

Here, the trial court ordered that the Sprays
recover Atrebled
pre-judgment interest of 7.75%@ on the
actual damages award of $190,445.70 in repair costs.  Therefore, the trial court abused its
discretion as a matter of law in awarding treble prejudgment interest.  Accordingly, we sustain the preserved portion
of the Ramseys= third issue on appeal.

VI.     MENTAL ANGUISH DAMAGES

In their fourth issue, the
Ramseys argue that the evidence is not legally sufficient to support the
$100,000 awards of mental anguish damages to Mrs. Spray and Mr. Spray. 








A.     Standard
of Review

We may sustain a legal
sufficiency challenge only when (1) the record discloses a complete absence of
evidence of a vital fact; (2) the court is barred by rules of law or of
evidence from giving weight to the only evidence offered to prove a vital fact;
(3) the evidence offered to prove a vital fact is no more than a mere
scintilla; or (4) the evidence establishes conclusively the opposite of a vital
fact.[38]  In determining whether there is legally
sufficient evidence to support the finding under review, we must consider
evidence favorable to the finding if a reasonable factfinder could and
disregard evidence contrary to the finding unless a reasonable factfinder could
not.[39]








B.     Mental
Anguish Damages Under the DTPA








Section 17.50(b)(1) of the Texas
Business and Commerce Code allows the award of mental anguish damages on a DTPA
claim if the trier of fact finds that the conduct of the defendant was
committed Aknowingly.@[40]  To recover mental anguish damages under the
DTPA, the plaintiff must present Adirect
evidence of the nature, duration, and severity of the[] mental anguish, thus
establishing a substantial disruption in the [plaintiff=s] daily
routine.@[41]  Proof of a physical manifestation of mental
anguish is not required.[42]  The plaintiff=s direct
evidence may include the plaintiff=s own
testimony or that of a third party or expert witness.[43]  If there is no direct evidence of mental
anguish, we apply traditional no‑evidence standards to determine whether
the record reveals any evidence of a Ahigh
degree of mental pain and distress@ that is
Amore
than mere worry, anxiety, vexation, embarrassment, or anger.@[44]

We are directed to Aclosely
scrutinize@ awards of mental anguish
damages.[45]  ASimply
because a plaintiff says he or she suffered mental anguish does not constitute
[legally sufficient] evidence@ to
support a mental anguish damages award.[46]  Even a plaintiff=s own
testimony of extreme fright, constant worry, extreme apprehension, extreme
embarrassment, nervousness on a daily basis, and loss of sleep does not,
without more, present more than a scintilla of evidence to support an award of
mental anguish damages.[47]

C.     Marianne Spray








To support her mental anguish
claim, Marianne Spray testified at trial regarding her mental state and the
impact the damage to the house has had on her life.  She testified that she feels Amore
comfortable in a hotel@ than in her house and that this
has been the cause of Auncomfortable@
discussions between herself and her husband. 
Mrs. Spray testified that she has experienced Aanxious
feelings,@ Aanxiousness,
anxieties, frustration, humiliation, [and] embarrassment,@ that
she wakes up at night, and that she has not slept Awell@ since
moving into the house.  In addition,
although in the past the Sprays entertained Aquite a
bit@ for Mr.
Spray=s work,
Mrs. Spray stated that she is now Areluctant@ to
bring people to their house. 

Mrs. Spray also testified at trial that she feels
Acheated@ and
like her soul has been Araped.@  The situation regarding her house makes her Avery
angry@ and
causes her to Aquestion all the things that
[she] believe[s] in and [her] faith.@  Mrs. Spray stated that there Areally
hasn't been much quality of life in this house@ and
that it has been Aa nightmare@ A[t]o an
extreme degree.@

Mrs. Spray cried at trial, stating that her
crying was due to the Abuildup
of . . . frustration@; she
testified that she also has cried in private over the situation regarding her
house.  And Mr. Spray testified at trial
that he has seen Mrs. Spray cry Aover
this problem@ on two or three occasions.  In addition, Mrs. Spray testified that she
does not feel safe because Athere=s carbon
monoxide in the house@ and that she suffers from
hypertension as a result of the Aemotional
issues@ she
experienced regarding the house.








Viewed in the light most favorable to Mrs. Spray,
her conclusory testimony does not present more than a scintilla of evidence
that her alleged mental anguish caused a substantial disruption in her daily
routine or amounted to a Ahigh degree of mental pain and
distress@ that is
more than mere worry, anxiety, vexation, embarrassment, or anger.[48]  Accordingly, we sustain this portion of the
Ramseys= fourth
issue on appeal.

D.     James Spray

To support his mental anguish
claim, James Spray testified at trial that he is Apretty
embarrassed@ and Apretty
angry@ and has
felt Aanxiety@ over
his house.  He feels that the Ramseys
have breached his trust, and he Akick[s]
[him]self@ because he feels that he has
been Acheated.@  Mr. Spray cried at trial, which he testified
was attributable to his Acontinuous@ and Aextreme@
feelings of anger toward the Ramseys. 
Mr. Spray also testified that he felt Aviolated@ and
like a Afailure.@ 








Viewed in the light most favorable to Mr. Spray,
his testimony does not present more than a scintilla of evidence that his alleged
mental anguish caused a substantial disruption in his daily routine or amounted
to a Ahigh
degree of mental pain and distress@ that is
more than mere worry, anxiety, vexation, embarrassment, or anger.[49]  Accordingly, we hold that the evidence is
legally insufficient to support an award of mental anguish damages to Mr.
Spray.  We sustain the remaining portion
of the Ramseys= fourth issue.[50]

 

VII.     ACTUAL DAMAGES RELATED
TO FENCE REPAIR

 

 

In their fifth issue, the
Ramseys argue that the evidence is legally and factually insufficient to
support $15,000 of the $190,445.70 actual damages award because $15,000 is
attributable to the repair of a hail-damaged fence and this damage does not
relate to the Sprays= DTPA claim.  The Sprays argue that the Ramseys did not
preserve error on this issue in part because the actual-damages question
submitted to the jury did not segregate, nor did the Ramseys ask the trial
court for it to segregate, the cost to repair the fence from other actual
damages awarded.  According to the
Sprays, it is therefore impossible to determine what amount the jury did or did
not award for the repair of the fence. 








When a damages question is submitted to the jury
that includes multiple possible elements, to preserve error challenging the
sufficiency of the evidence supporting one but not all of the elements of
damages a defendant is required to object and ask the trial court to either
exclude that element from the damages question or submit damages elements
separately.[51]








In this case, the Sprays presented evidence of
fence and other repair costs to the jury. 
The Ramseys failed to object to the submission of the actual damages
question on the ground that it may include fence repair costs.[52]  They also failed to request the submission of
an alternate question that either excluded or segregated fence repair costs
from other actual damages.[53]  Accordingly, we hold that the Ramseys failed
to preserve error regarding the sufficiency of the evidence supporting the
portion of the actual damages they contend is attributable to fence repair costs.[54]  We overrule the Ramseys= fifth
issue.[55]

VIII.     CONCLUSION

In conclusion, we hold that the
trial court erred by failing to apply $400,000 in settlement credit against the
award of economic damages; by awarding the Sprays more than three times the
amount of their economic damages; and by awarding three times the amount of
prejudgment interest on the Sprays= actual
damages.  We further hold that the
evidence is legally insufficient to support the mental anguish damages awards
in favor of the Sprays.








We, therefore, reverse that part of the trial
court=s
judgment awarding the Sprays their economic damages, and remand that part of
the judgment to the trial court for recalculation of those damage awards and
application of the settlement credit, pursuant to this opinion.  In addition, we reverse the trial court=s award
of Atrebled pre-judgment
interest of 7.75% from January 24, 2005[,]@
assessed on the Sprays= actual and mental anguish
damages, and render judgment that they recover interest of 7.75% from January
24, 2005, only on the amount of the damages, if any, that they are entitled to
recover upon application of settlement credit. 
We further reverse the trial court=s award
of $100,000 each in mental anguish damages to Mr. and Mrs. Spray and render
judgment that they take nothing from the Ramseys on their claims for mental
anguish damages.  In all other respects,
the trial court=s judgment is affirmed.

 

 

PER CURIAM

PANEL:  CAYCE, C.J.; MCCOY and
MEIER, JJ.

DELIVERED:  December 23, 2009











[1]See Tex. R. App. P. 47.4.





[2]AAdditional@ damages are amounts
recoverable under section 17.50(b)(1) in excess of economic damages; they may
include mental anguish damages and treble economic damages based on the finding
of a knowing DTPA violation.  See Tex.
Bus. & Com. Code Ann. ' 17.50(b)(1), (e), (f) (Vernon Supp. 2009).





[3]The trial court reduced
the jury=s Aadditional@ damages award of
$2,000,000 pursuant to the DTPA, which mandates that economic and Aadditional@ damages be capped at
treble economic damages.  See id.
' 17.50(b)(1) (AIf the trier of fact
finds that the conduct of the defendant was committed
knowingly . . . the trier of fact may award not more than
three times the amount of economic damages.@).





[4]Oyster Creek Fin. Corp.
v. Richwood Invs. II, Inc., 176 S.W.3d 307, 326 (Tex. App.CHouston [1st Dist.] 2004, pet. denied).





[5]Cire v. Cummings, 134 S.W.3d 835, 838B39 (Tex. 2004).





[6]E.I. du Pont de Nemours
& Co. v. Robinson, 923 S.W.2d 549, 558 (Tex. 1995).





[7]In re Barber, 982 S.W.2d 364, 366
(Tex. 1998) (orig. proceeding).





[8]Butnaru v. Ford Motor Co., 84 S.W.3d 198, 211
(Tex. 2002) (op. on reh=g).





[9]Tex. Civ. Prac. &
Rem. Code Ann. ' 33.002(a) (Vernon
2008) (providing that chapter 33 applies to Aany cause of action based on tort@ or Aany action brought under
the Deceptive Trade Practices‑Consumer Protection Act@ Ain which a . . . settling
person . . . is found responsible for a percentage of the harm for which relief
is sought@).





[10]Tex. Civ. Prac. &
Rem. Code Ann. ' 33.012(b) (Vernon
2008).





[11]See Carl J. Battaglia,
M.D., P.A. v. Alexander, 177 S.W.3d 893, 906 (Tex. 2005) (ASection 33.012 . . . tells us that credit must be
given for settlements.@); see also Mobil Oil
Corp. v. Ellender, 968 S.W.2d 917, 927 (Tex. 1998); Roberts v. Grande,
868 S.W.2d 956, 959 (Tex. App.CHouston [14th Dist.] 1994, no writ). 





[12]See Tex. Civ. Prac. &
Rem. Code Ann. ' 33.012(b); see
also Stewart Title Guar. Co. v. Sterling, 822 S.W.2d 1, 9 (Tex. 1991) (AMerely because actual
damages are established by the jury does not necessarily mean that the
plaintiff may recover them.@).





[13]Utts v. Short, 81 S.W.3d 822, 828
(Tex. 2002) (op. on reh=g); see also Ellender,
968 S.W.2d at 927 (holding that nonsettling defendant can meet its burden of
proof Aby placing the settlement
agreement or some evidence of the settlement amount in the record@).





[14]Utts, 81 S.W.3d at 828; Ellender,
968 S.W.2d at 928.   





[15]Ellender, 968 S.W.2d at 927B28; see Tex. Civ.
Prac. & Rem. Code Ann. ' 33.002(c)(2) (Vernon 2008) (AThis chapter does not
apply to . . . a claim for exemplary damages included in an
action to which this chapter otherwise applies.@).





[16]Ellender, at 928B29.





[17]Oyster Creek, 176 S.W.3d at 327; see
Cohen v. Arthur Andersen, L.L.P., 106 S.W.3d 304, 310 (Tex. App.CHouston [1st Dist.] 2003,
no pet.).





[18]Crown Life Ins. Co. v.
Casteel,
22 S.W.3d 378, 390B92 (Tex. 2000) (op. on
reh=g); CTTI Priesmeyer,
Inc. v. K & O Ltd. P=ship, 164 S.W.3d 675, 684B85 (Tex. App.CAustin 2005, no pet.);
Roberts, 868 S.W.2d at 959.





[19]CTTI, 164 S.W.3d at 685 n.3; Cohen,
106 S.W.3d at 310.





[20]CTTI, 164 S.W.3d at 685 n.3; Cohen,
106 S.W.3d at 310.





[21]Section 17.50(b)(1) of
the DTPA provides that  Athe trier of fact may award not more than three
times the amount of economic damages@ based on the defendant=s knowing conduct.  See Tex. Bus. & Com. Code Ann. ' 17.50(b)(1).  Although the trial court erroneously exceeded
this cap by awarding the Sprays four times the amount of economic damages, see
infra Part IV, it is clear from the face of the judgment that the
additional damages award was made pursuant to the DTPA and not pursuant to
section 33.012(b) of the civil practice and remedies code.





[22]Stewart Title, 822 S.W.2d at 9; see
Universal Servs. Co. v. Ung, 882 S.W.2d 460, 467 (Tex. App.CHouston [14th Dist.]
1994) (A[I]n cases where actual
damages awards may be trebled by statute, the supreme court allows credits of
settlement proceeds against the trebled sum.@ (emphasis in original)),
rev=d on other grounds, 904 S.W.2d 638 (Tex.
1995).





[23]See Ellender, 968 S.W.2d at 928; Cohen,
106 S.W.3d at 310.





[24]See Oyster Creek, 176 S.W.3d at 327; CTTI,
164 S.W.3d at 685 n.3; Cohen, 106 S.W.3d at 310.





[25]The Sprays argue that the
Ramseys failed to preserve error because they did not object to the additional
damages award in the trial court.  In the
Ramseys= motion for suggestion of
remittitur, however, they complain that A[t]he amount awarded [in the jury verdict] as
additional damages is clearly excessive and unlawful because the DTPA
specifically provides that additional damages may not exceed >more than three times the
amount of economic damages= when the alleged deceptive practice was
committed >knowingly=@ (quoting Tex. Bus. &
Com. Code Ann. ' 17.50(b)(1)).  The Ramseys, therefore, preserved this issue
for our review.





[26]Tex. Bus. & Com. Code
Ann. ' 17.50(b)(1) (emphasis
added).





[27]Dal‑Chrome Co. v.
Brenntag Sw., Inc., 183 S.W.3d 133, 143B44 (Tex. App.CDallas 2006, no pet.) (citing Jim Walter
Homes, Inc. v. Valencia, 690 S.W.2d 239, 241 (Tex. 1985)); see Tex.
Bus. & Com. Code Ann. ' 17.50(b)(1).





[28]Dal‑Chrome, 183 S.W.3d at 144; see
Tex. Bus. & Com. Code Ann. ' 17.50(b)(1).





[29]A trial court abuses its
discretion if it misapplies the law to established facts.  State v. Sw. Bell Tel. Co., 526 S.W.2d
526, 528 (Tex. 1975); In re Talco-Bogata Consol. Indep. Sch. Dist. Bond
Election, 994 S.W.2d 343, 347 (Tex. App.CTexarkana 1999, no pet.); see also Marsh v.
Marsh, 949 S.W.2d 734, 744 (Tex. App.CHouston [14th Dist.] 1997, no writ) (AA clear failure by the
trial court to analyze or apply the law correctly will constitute an abuse of
discretion.@).





[30]In their motion for
suggestion of remittitur, the Ramseys assert that the DTPA prohibits
consideration of prejudgment interest when calculating Aadditional@ damages.  They did not present the trial court with the
three other grounds on which they now challenge the trial court=s interest award: 1) that
the DTPA prohibits prejudgment interest on mental anguish damages; 2) that the
DTPA prohibits prejudgment interest on future damages; and 3) that the finance
code requires application of pre- and post-judgment interest at a rate of 7.5
percent.  See Tex. R. App. P.
33.1(a) (providing that a party must have presented to the trial court a timely
request, objection, or motion that states the specific grounds for the desired
ruling, if they are not apparent from the context of the request, objection, or
motion, and obtain an express or implied ruling from the trial court); Campbell
v. State, 85 S.W.3d 176, 185 (Tex. 2002). 
Contrary to the Ramseys= contention, error in the calculation of pre- and
post-judgment interest is not recognized as fundamental error reviewable on
appeal even when not preserved in the trial court.  See In re B.L.D., 113 S.W.3d 340, 350
(Tex. 2003) (stating civil doctrine of fundamental error is Adiscredited@ and is only recognized Ain rare instances@ when the record shows a
jurisdictional defect or when certain types of error are committed in juvenile
delinquency cases), cert. denied, 541 U.S. 945 (2004); see also
Pirtle v. Gregory, 629 S.W.2d 919, 919B20 (Tex. 1982). Therefore, the Ramseys waived
these three grounds as bases for challenging the trial court=s interest award.  See Tex. R. App. P. 33.1(a).





[31]Toshiba Mach. Co., Am. v.
SPM Flow Control, Inc., 180 S.W.3d 761, 785 (Tex. App.CFort Worth 2005, pet. granted, judgm=t vacated w.r.m.) (op. on
reh=g); J.C. Penney Life
Ins. Co. v. Heinrich, 32 S.W.3d 280, 289 (Tex. App.CSan Antonio 2000, pet.
denied).





[32]Walker v. Packer, 827 S.W.2d 833, 839B40 (Tex. 1992); Heinrich,
32 S.W.3d at 289.





[33]Walker, 827 S.W.2d at 840; Heinrich,
32 S.W.3d at 289.





[34]Toshiba, 180 S.W.3d at 785; Heinrich,
32 S.W.3d at 289.





[35]Tex. Bus. & Com. Code
Ann. ' 17.50(b)(1).





[36]Id. ' 17.50(e).





[37]Aetna Cas. & Sur. Co.
v. Garza,
906 S.W.2d 543, 556 (Tex. App.CSan Antonio 1995, writ dism=d) (reversing portion of
judgment awarding trebled prejudgment interest).





[38]Uniroyal Goodrich Tire
Co. v. Martinez, 977 S.W.2d 328, 334 (Tex. 1998) (op. on reh=g), cert. denied,
526 U.S. 1040 (1999); Robert W. Calvert, "No Evidence" and
"Insufficient Evidence" Points of Error, 38 Tex. L. Rev. 361, 362B63 (1960).





[39]Cent. Ready Mix Concrete
Co. v. Islas,
228 S.W.3d 649, 651 (Tex. 2007); City of Keller v. Wilson, 168 S.W.3d
802, 807, 827 (Tex. 2005).





[40]Tex. Bus. & Com. Code
Ann. ' 17.50(b)(1).  The Ramseys do not challenge on appeal the
jury=s finding that they
committed Aknowing@ DTPA violations.





[41]Latham v. Castillo, 972 S.W.2d 66, 69B70 (Tex. 1998); see
also Parkway Co. v. Woodruff, 901 S.W.2d 434, 444 (Tex. 1995); Anderson
v. Long, 118 S.W.3d 806, 811 (Tex. App.CFort Worth 2003, no pet.).





[42]City of Tyler v. Likes, 962 S.W.2d 489, 495
(Tex. 1997); Parkway, 901 S.W.2d at 443.





[43]Parkway, 901 S.W.2d at 444.





[44]Latham, 972 S.W.2d at 70; see
Parkway, 901 S.W.2d at 444;  Anderson,
118 S.W.3d at 811.





[45]Gunn Infiniti, Inc. v.
O'Byrne,
996 S.W.2d 854, 860 (Tex. 1999); see Universe Life Ins. Co. v. Giles,
950 S.W.2d 48, 54 (Tex. 1997).





[46]Gunn Infiniti, 996 S.W.2d at 861.





[47]Anderson, 118 S.W.3d at 811
(citing Latham, 972 S.W.2d at 69B70).





[48]Latham, 972 S.W.2d at 69B70; see Parkway,
901 S.W.2d at 444; Anderson, 118 S.W.3d at 811; see also Cont'l
Coffee Prods. Co. v. Cazarez, 937 S.W.2d 444, 450 (Tex. 1996) (AAnything more than a
scintilla of evidence is legally sufficient to support the finding.@).





[49]Latham, 972 S.W.2d at 69B70; see Cont=l Coffee, 937 S.W.2d at 450; Parkway,
901 S.W.2d at 444; Anderson, 118 S.W.3d at 811.





[50]Because we sustain this
issue on other grounds, we do not address, and express no opinion regarding,
the Ramseys= contention that the
Sprays failed to establish a causal link between the Sprays= alleged mental anguish
and the Ramseys= DTPA violations. 





[51]Tagle v. Galvan, 155 S.W.3d 510, 515B16 (Tex. App.CSan Antonio 2004, no
pet.) (holding that, because defendant did not ask for separate damage
findings, it could only challenge Asufficiency of the evidence supporting the whole
verdict@ (citing Thomas v.
Oldham, 895 S.W.2d 352, 360 (Tex. 1995))); see also Tex. R. App. P.
33.1(a); Tex. R. Evid. 103(a)(1).





[52]Jury question number
eight asks, in part:  AAnswer in dollars and
cents, for damages, if any, for: . . . c. Reasonable and necessary costs of
repairing the home: Answer: $_______.@  





[53]Although the Ramseys
objected that the actual damages award was excessive in their motion for
suggestion of remittitur, they did so on grounds unrelated to the $15,000 fence
repair charges.  





[54]See Thomas, 895 S.W.2d at 360; Tagle,
155 S.W.3d at 519.





[55]Because the Ramseys
failed to preserve error, we also do not address their unpreserved claim that
the $15,000 cost to repair the fence was not reasonable and necessary.