# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH


NO. 2-08-129-CV

| | |
|---|---|
| JOEL A. RAMSEY AND<br>MARLA K. RAMSEY | APPELLANTS |

V.

| | |
|---|---|
| JAMES R. SPRAY AND<br>MARIANNE SPRAY | APPELLEES |

------------

FROM THE 362ND DISTRICT COURT OF DENTON COUNTY

------------

## MEMORANDUM OPINION[1]

------------

In five issues, appellants Joel A. and Marla K. Ramsey appeal the award of damages to appellees James R. and Marianne Spray on the Sprays' Deceptive Trade Practices-Consumer Protection Act (DTPA) claim arising from the sale and purchase of a house. We affirm in part, reverse and render in part,

---

[1] *See* Tex. R. App. P. 47.4.

and reverse and remand in part for further proceedings consistent with this opinion.

## I. BACKGROUND

In 2002, appellants Joel A. and Marla K. Ramsey decided to sell their house in Flower Mound, Texas, and hired Sharon Hodnett of Keller Williams/DFW as their agent.

More than ten months before entering into a contract for sale of their house to James R. and Marianne Spray, the Ramseys completed a sellers' disclosure notice. Approximately five months before the sale closed on May 23, 2003, the Ramseys discovered water damage in the kitchen caused by a leaky roof. The Ramseys, however, did not supplement or amend their sellers' disclosure notice to reflect the house's faulty roof or the water damage. The Sprays' home inspector, James Wood, identified various minor needed repairs but did not identify any water damage or a faulty roof.

After purchasing the house, the Sprays began to experience problems associated with water penetration due to the house's faulty roof. Mrs. Spray discovered standing water in one of the kitchen drawers in approximately July 2003. In December 2003, the Sprays hired a contractor to investigate and fix the problem. The contractor found multiple leaks due to improper roof installation. The leaks resulted in water damage throughout the house,

2

including damaged roof decking, exterior wall studs, interior walls, and wooden flooring. The total cost to repair the damage to the house was $190,445.70.

The Sprays sued the Ramseys, Hodnett, Keller Williams/DFW, and Wood for negligence, fraud, breach of warranty, violations of the DTPA, and unconscionable or knowing conduct. The Sprays sought judgment against all defendants "jointly and severally" for actual, exemplary, punitive, statutory, treble, and mental anguish damages, attorney's fees, interest, and costs.

On November 3, 2006, the Sprays settled and released all claims with Hodnett, Keller Williams/DFW, and Wood for a collective amount of $400,000.

The case proceeded to trial against the Ramseys on May 21, 2007. During trial, the Ramseys introduced the settlement agreement for the purpose of obtaining a settlement credit, and it was admitted without objection.

The jury returned a verdict finding the Ramseys liable for fraud and DTPA violations. The jury awarded the Sprays $200,000 actual damages for the costs of repair to the house, mental anguish damages of $100,000 each,

$2,000,000 in "additional" damages,[2] and $50,000 in attorney's fees through trial.

On December 21, 2007, the trial court rendered final judgment on the DTPA verdict, awarding the Sprays $190,445.70 in actual damages, $571,337.10 in "additional" damages,[3] $100,000 each to the Sprays for mental anguish, plus attorney's fees, interest, and costs. After judgment was rendered, the Ramseys filed a motion for new trial, asserting, among other complaints, that the trial court erred by not applying the $400,000 settlement amount as a credit against the damages award and by awarding "excessive" actual damages. The motion for new trial was overruled by operation of law. This appeal followed.

---

[2] "Additional" damages are amounts recoverable under section 17.50(b)(1) in excess of economic damages; they may include mental anguish damages and treble economic damages based on the finding of a knowing DTPA violation. *See* Tex. Bus. & Com. Code Ann. § 17.50(b)(1), (e), (f) (Vernon Supp. 2009).

[3] The trial court reduced the jury's "additional" damages award of $2,000,000 pursuant to the DTPA, which mandates that economic and "additional" damages be capped at treble economic damages. *See id.* § 17.50(b)(1) ("If the trier of fact finds that the conduct of the defendant was committed knowingly . . . the trier of fact may award not more than three times the amount of economic damages.").

4

## II.   ISSUES

The Ramseys bring the following five issues on appeal:

1)    The trial court abused its discretion by failing to apply as a settlement credit against the damages award the $400,000 that the Sprays received in settlement from Hodnett, Keller Williams/DFW, and Wood.

2)    The trial court erred by awarding as additional damages under the DTPA four times the amount of actual damages.

3)    The trial court erred in calculating pre- and post-judgment interest, resulting in an excessive and usurious interest award.

4)    The Sprays' awards of mental anguish damages are not supported by legally sufficient evidence.

5)    The actual damages award is not supported by legally or factually sufficient evidence because it includes $15,000 in repair costs that are unrelated to the Sprays' DTPA claims.

## III.   SETTLEMENT CREDIT

In their first issue, the Ramseys complain that the trial court abused its discretion by failing to credit against the damages award the $400,000 the Sprays received in settlement.

A.    Standard of Review

A trial court's determination of the existence or amount of a settlement credit is reviewed for an abuse of discretion.[4]  To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, we must decide whether the act was arbitrary or unreasonable.[5]  An appellate court cannot conclude that a trial court abused its discretion merely because the appellate court would have ruled differently in the same circumstances.[6]

An abuse of discretion does not occur when the trial court bases its decisions on conflicting evidence.[7]  Furthermore, an abuse of discretion does not occur as long as some evidence of substantive and probative character exists to support the trial court's decision.[8]

---

[4] ... *Oyster Creek Fin. Corp. v. Richwood Invs. II, Inc.*, 176 S.W.3d 307, 326 (Tex. App.—Houston [1st Dist.] 2004, pet. denied).

[5] ... *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004).

[6] ... *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995).

[7] ... *In re Barber*, 982 S.W.2d 364, 366 (Tex. 1998) (orig. proceeding).

[8] ... *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002) (op. on reh'g).

B.    Law Governing Settlement Credits

Texas Civil Practice and Remedies Code Chapter 33 governs settlement

credits in all tort and DTPA actions.[9]  Section 33.012(b) of the code provides:

> If the claimant has settled with one or more persons, the court shall
> further reduce the amount of damages to be recovered by the
> claimant with respect to a cause of action by the sum of the dollar
> amounts of all settlements.[10]

This statute is mandatory.[11]  Because section 33.012(b) calls for settlement

credits to apply to "damages to be recovered by the claimant," the credit is

applied to the amount of damages awarded in the judgment, not the amount of

damages found by the jury.[12]

---

[9] Tex. Civ. Prac. & Rem. Code Ann. § 33.002(a) (Vernon 2008) (providing that chapter 33 applies to "any cause of action based on tort" or "any action brought under the Deceptive Trade Practices-Consumer Protection Act" "in which a . . . settling person . . . is found responsible for a percentage of the harm for which relief is sought").

[10] Tex. Civ. Prac. & Rem. Code Ann. § 33.012(b) (Vernon 2008).

[11] See Carl J. Battaglia, M.D., P.A. v. Alexander, 177 S.W.3d 893, 906 (Tex. 2005) ("Section 33.012 . . . tells us that credit must be given for settlements."); see also Mobil Oil Corp. v. Ellender, 968 S.W.2d 917, 927 (Tex. 1998); Roberts v. Grande, 868 S.W.2d 956, 959 (Tex. App.—Houston [14th Dist.] 1994, no writ).

[12] See Tex. Civ. Prac. & Rem. Code Ann. § 33.012(b); see also Stewart Title Guar. Co. v. Sterling, 822 S.W.2d 1, 9 (Tex. 1991) ("Merely because actual damages are established by the jury does not necessarily mean that the plaintiff may recover them.").

A nonsettling defendant has the burden to prove the existence and amount of a settlement credit, and may do so by placing the settlement agreement or some other evidence of the settlement amount in the record.[13] The burden then shifts to the plaintiff to show that all or a portion of this settlement amount should not be credited.[14]

A nonsettling defendant is not entitled to credit for amounts paid to settle punitive damages claims.[15] To reduce a settlement credit on this basis, however, it is the plaintiff's burden to tender a valid settlement agreement that allocates between actual and punitive damages.[16] If the plaintiff does not satisfy this burden, then the nonsettling party is entitled to full settlement credit.[17]

---

[13] ... *Utts v. Short*, 81 S.W.3d 822, 828 (Tex. 2002) (op. on reh'g); *see also Ellender*, 968 S.W.2d at 927 (holding that nonsettling defendant can meet its burden of proof "by placing the settlement agreement or some evidence of the settlement amount in the record").

[14] ... *Utts*, 81 S.W.3d at 828; *Ellender*, 968 S.W.2d at 928.

[15] ... *Ellender*, 968 S.W.2d at 927–28; *see* Tex. Civ. Prac. & Rem. Code Ann. § 33.002(c)(2) (Vernon 2008) ("This chapter does not apply to . . . a claim for exemplary damages included in an action to which this chapter otherwise applies.").

[16] ... *Ellender*, at 928–29.

[17] ... *Oyster Creek*, 176 S.W.3d at 327; *see Cohen v. Arthur Andersen, L.L.P.*, 106 S.W.3d 304, 310 (Tex. App.—Houston [1st Dist.] 2003, no pet.).

In addition, the nonsettling defendant may only claim a credit based on the damages for which all tortfeasors are jointly liable.[18] However, if settlement monies were also paid on claims for which there is no joint and several liability, it is the plaintiff's burden to establish any reduction in a settlement credit by tendering a settlement agreement that allocates the settlement amount between sole and joint liability claims.[19] Otherwise, the nonsettling defendant is entitled to the full credit.[20]

C.     Application of the Settlement Credit

The Ramseys assert that the trial court abused its discretion by failing to reduce the judgment award by the entire $400,000 amount that the Sprays received in settlement.  In response, the Sprays contend that the court did apply the $400,000 settlement credit by reducing the jury's $2,000,000 "additional" damages award to $571,337.10.  The trial court's judgment, however, states that the additional damages award was made "pursuant to the

---

[18] _Crown Life Ins. Co. v. Casteel_, 22 S.W.3d 378, 390–92 (Tex. 2000) (op. on reh'g); _CTTI Priesmeyer, Inc. v. K & O Ltd. P'ship_, 164 S.W.3d 675, 684–85 (Tex. App.—Austin 2005, no pet.); _Roberts_, 868 S.W.2d at 959.

[19] _CTTI_, 164 S.W.3d at 685 n.3; _Cohen_, 106 S.W.3d at 310.

[20] _CTTI_, 164 S.W.3d at 685 n.3; _Cohen_, 106 S.W.3d at 310.

terms of the [DTPA]."[21]  There is no evidence in the record that the damages were reduced, as the Sprays contend, as a result of the trial court's application of settlement credit.

In the alternative, the Sprays contend that the Ramseys are not entitled to have the $400,000 settlement credit applied against the additional damages because they are punitive in nature and the Ramseys and settling defendants are not jointly and severally liable for punitive damages.  It is well settled, however, that "any credit for settlements made by other alleged joint tortfeasors must be applied[, if at all,] after the trebling of actual damages."[22] Moreover, the Sprays did not meet their burden of showing that the settlement agreement allocated dollars toward the settlement of punitive damages or claims for which the settling defendants and the Ramseys were not jointly and

---

[21] ... Section 17.50(b)(1) of the DTPA provides that "the trier of fact may award not more than three times the amount of economic damages" based on the defendant's knowing conduct.  *See* Tex. Bus. & Com. Code Ann. § 17.50(b)(1).  Although the trial court erroneously exceeded this cap by awarding the Sprays four times the amount of economic damages, *see infra* Part IV, it is clear from the face of the judgment that the additional damages award was made pursuant to the DTPA and not pursuant to section 33.012(b) of the civil practice and remedies code.

[22] ... *Stewart Title*, 822 S.W.2d at 9; *see Universal Servs. Co. v. Ung*, 882 S.W.2d 460, 467 (Tex. App.—Houston [14th Dist.] 1994) ("[I]n cases where actual damages awards may be trebled by statute, the supreme court allows credits of settlement proceeds against the *trebled sum*." (emphasis in original)), *rev'd on other grounds*, 904 S.W.2d 638 (Tex. 1995).

severally liable.[23]  Because this burden was not met, the Sprays are not entitled to a reduction of settlement credit.[24]

We hold that the trial court abused its discretion by failing to apply the $400,000 settlement credit against the economic damages awards.  We sustain the Ramseys' first issue.

## IV.    TREBLE DAMAGES

In their second issue, the Ramseys contend that the trial court abused its discretion by awarding the Sprays four times, rather than three times, the amount of their economic damages under the DTPA.[25]  Section 17.50(b)(1) of the Texas Business and Commerce Code permits a maximum award of three times the amount of economic damages for a knowing DTPA violation, providing:

---

[23]...  *See Ellender*, 968 S.W.2d at 928; *Cohen*, 106 S.W.3d at 310.

[24]...  *See Oyster Creek*, 176 S.W.3d at 327; *CTTI*, 164 S.W.3d at 685 n.3; *Cohen*, 106 S.W.3d at 310.

[25]...  The Sprays argue that the Ramseys failed to preserve error because they did not object to the additional damages award in the trial court.  In the Ramseys' motion for suggestion of remittitur, however, they complain that "[t]he amount awarded [in the jury verdict] as additional damages is clearly excessive and unlawful because the DTPA specifically provides that additional damages may not exceed 'more than three times the amount of economic damages' when the alleged deceptive practice was committed 'knowingly'" (quoting Tex. Bus. & Com. Code Ann. § 17.50(b)(1)).  The Ramseys, therefore, preserved this issue for our review.

11

(b) In a suit filed under this section, each consumer who prevails may obtain:

> (1) the amount of economic damages found by the trier of fact. *If the trier of fact finds that the conduct of the defendant was committed knowingly*, the consumer may also recover damages for mental anguish, as found by the trier of fact, and *the trier of fact may award not more than three times the amount of economic damages.*[26]

When a trial court awards actual damages on a DTPA claim and, in addition, awards three times that amount based on the jury's award of "additional" damages for a knowing DTPA violation, the result is an award of four times the damages amount.[27] In such cases, the appellate court should modify the judgment "to limit the DTPA award to three times the amount of economic damages."[28]

In this case, the trial court entered judgment awarding the Sprays $190,445.70 in actual economic damages *plus* three times that amount, or $571,337.10. As a result, the trial court awarded the Sprays four times the amount of their economic damages. Accordingly, we hold that the trial court

---

[26] ... Tex. Bus. & Com. Code Ann. § 17.50(b)(1) (emphasis added).

[27] ... *Dal-Chrome Co. v. Brenntag Sw., Inc.*, 183 S.W.3d 133, 143–44 (Tex. App.—Dallas 2006, no pet.) (citing *Jim Walter Homes, Inc. v. Valencia*, 690 S.W.2d 239, 241 (Tex. 1985)); *see* Tex. Bus. & Com. Code Ann. § 17.50(b)(1).

[28] ... *Dal-Chrome*, 183 S.W.3d at 144; *see* Tex. Bus. & Com. Code Ann. § 17.50(b)(1).

12

abused its discretion by awarding the Sprays more than three times the amount of their economic damages on their DTPA claim based on the Ramseys' knowing DTPA violations.[29] We sustain the Ramseys' second issue.

## V. AWARD OF PRE- AND POST-JUDGMENT INTEREST

In their third issue, the Ramseys complain of the award of pre- and post-judgment interest on four distinct grounds, three of which are waived because they were not preserved in the trial court.[30] The only ground that was

---

[29] ... A trial court abuses its discretion if it misapplies the law to established facts. *State v. Sw. Bell Tel. Co.*, 526 S.W.2d 526, 528 (Tex. 1975); *In re Talco-Bogata Consol. Indep. Sch. Dist. Bond Election*, 994 S.W.2d 343, 347 (Tex. App.—Texarkana 1999, no pet.); *see also Marsh v. Marsh*, 949 S.W.2d 734, 744 (Tex. App.—Houston [14th Dist.] 1997, no writ) ("A clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion.").

[30] ... In their motion for suggestion of remittitur, the Ramseys assert that the DTPA prohibits consideration of prejudgment interest when calculating "additional" damages. They did not present the trial court with the three other grounds on which they now challenge the trial court's interest award: 1) that the DTPA prohibits prejudgment interest on mental anguish damages; 2) that the DTPA prohibits prejudgment interest on future damages; and 3) that the finance code requires application of pre- and post-judgment interest at a rate of 7.5 percent. *See* Tex. R. App. P. 33.1(a) (providing that a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling, if they are not apparent from the context of the request, objection, or motion, and obtain an express or implied ruling from the trial court); *Campbell v. State*, 85 S.W.3d 176, 185 (Tex. 2002). Contrary to the Ramseys' contention, error in the calculation of pre- and post-judgment interest is not recognized as fundamental error reviewable on appeal even when not preserved in the trial court. *See In re B.L.D.*, 113 S.W.3d 340, 350 (Tex. 2003) (stating civil doctrine of fundamental error is "discredited" and is only recognized "in rare instances" when the record shows a jurisdictional

13

preserved was whether the trial court erred by awarding three times the amount of prejudgment interest on the Sprays' actual damages.

## A.    Standard of Review

We apply an abuse of discretion standard to review the trial court's award of prejudgment interest.[31]  Under this standard, we will not disturb a trial court's findings on factual issues unless the court reasonably could have reached only one decision and it failed to do so.[32]  However, "[a] trial court has no 'discretion' in determining what the law is or applying the law to the facts."[33]  Accordingly, the abuse of discretion standard applies to the trial court's factual findings as they relate to prejudgment interest; but the de novo standard applies to the trial court's application of the law to the facts.[34]

---

defect or when certain types of error are committed in juvenile delinquency cases), *cert. denied*, 541 U.S. 945 (2004); *see also Pirtle v. Gregory*, 629 S.W.2d 919, 919–20 (Tex. 1982). Therefore, the Ramseys waived these three grounds as bases for challenging the trial court's interest award. *See* Tex. R. App. P. 33.1(a).

[31] *...* *Toshiba Mach. Co., Am. v. SPM Flow Control, Inc.*, 180 S.W.3d 761, 785 (Tex. App.—Fort Worth 2005, pet. granted, judgm't vacated w.r.m.) (op. on reh'g); *J.C. Penney Life Ins. Co. v. Heinrich*, 32 S.W.3d 280, 289 (Tex. App.—San Antonio 2000, pet. denied).

[32] *...* *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992); *Heinrich*, 32 S.W.3d at 289.

[33] *...* *Walker*, 827 S.W.2d at 840; *Heinrich*, 32 S.W.3d at 289.

[34] *...* *Toshiba*, 180 S.W.3d at 785; *Heinrich*, 32 S.W.3d at 289.

14

B.     Prejudgment Interest and Treble Damages Under the DTPA

Section 17.50(b)(1) of the Texas Business and Commerce Code permits only economic damages to be trebled on DTPA claims.[35]   Section 17.50(e) states that "prejudgment interest may not be considered" in computing such damages.[36]  When a trial court calculates "additional" damages under section 17.50(b), the amount of the "additional damages" "is to be based upon the actual damages only, not actual damages plus prejudgment interest."[37]

Here, the trial court ordered that the Sprays recover "trebled pre-judgment interest of 7.75%" on the actual damages award of $190,445.70 in repair costs.   Therefore, the trial court abused its discretion as a matter of law in awarding treble prejudgment interest.  Accordingly, we sustain the preserved portion of the Ramseys' third issue on appeal.

## VI.    MENTAL ANGUISH DAMAGES

In their fourth issue, the Ramseys argue that the evidence is not legally sufficient to support the $100,000 awards of mental anguish damages to Mrs. Spray and Mr. Spray.

---

[35]... Tex. Bus. & Com. Code Ann. § 17.50(b)(1).

[36]... *Id.* § 17.50(e).

[37]... *Aetna Cas. & Sur. Co. v. Garza*, 906 S.W.2d 543, 556 (Tex. App.—San Antonio 1995, writ dism'd) (reversing portion of judgment awarding trebled prejudgment interest).

15

A.    Standard of Review

We may sustain a legal sufficiency challenge only when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact.[38] In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could and disregard evidence contrary to the finding unless a reasonable factfinder could not.[39]

---

[38] *... Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1040 (1999); Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex. L. Rev. 361, 362–63 (1960).

[39] *... Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005).

B.    Mental Anguish Damages Under the DTPA

Section 17.50(b)(1) of the Texas Business and Commerce Code allows the award of mental anguish damages on a DTPA claim if the trier of fact finds that the conduct of the defendant was committed "knowingly."[40]  To recover mental anguish damages under the DTPA, the plaintiff must present "direct evidence of the nature, duration, and severity of the[] mental anguish, thus establishing a substantial disruption in the [plaintiff's] daily routine."[41]  Proof of a physical manifestation of mental anguish is not required.[42]  The plaintiff's direct evidence may include the plaintiff's own testimony or that of a third party or expert witness.[43]  If there is no direct evidence of mental anguish, we apply traditional no-evidence standards to determine whether the record reveals any

---

[40] Tex. Bus. & Com. Code Ann. § 17.50(b)(1).  The Ramseys do not challenge on appeal the jury's finding that they committed "knowing" DTPA violations.

[41] *Latham v. Castillo*, 972 S.W.2d 66, 69–70 (Tex. 1998); *see also Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995); *Anderson v. Long*, 118 S.W.3d 806, 811 (Tex. App.—Fort Worth 2003, no pet.).

[42] *City of Tyler v. Likes*, 962 S.W.2d 489, 495 (Tex. 1997); *Parkway*, 901 S.W.2d at 443.

[43] *Parkway*, 901 S.W.2d at 444.

evidence of a "high degree of mental pain and distress" that is "more than mere worry, anxiety, vexation, embarrassment, or anger."[44]

We are directed to "closely scrutinize" awards of mental anguish damages.[45] "Simply because a plaintiff says he or she suffered mental anguish does not constitute [legally sufficient] evidence" to support a mental anguish damages award.[46] Even a plaintiff's own testimony of extreme fright, constant worry, extreme apprehension, extreme embarrassment, nervousness on a daily basis, and loss of sleep does not, without more, present more than a scintilla of evidence to support an award of mental anguish damages.[47]

C.  Marianne Spray

To support her mental anguish claim, Marianne Spray testified at trial regarding her mental state and the impact the damage to the house has had on her life. She testified that she feels "more comfortable in a hotel" than in her house and that this has been the cause of "uncomfortable" discussions

---

[44] *Latham*, 972 S.W.2d at 70; *see Parkway*, 901 S.W.2d at 444; *Anderson*, 118 S.W.3d at 811.

[45] *Gunn Infiniti, Inc. v. O'Byrne*, 996 S.W.2d 854, 860 (Tex. 1999); *see Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 54 (Tex. 1997).

[46] *Gunn Infiniti*, 996 S.W.2d at 861.

[47] *Anderson*, 118 S.W.3d at 811 (citing *Latham*, 972 S.W.2d at 69–70).

between herself and her husband. Mrs. Spray testified that she has experienced "anxious feelings," "anxiousness, anxieties, frustration, humiliation, [and] embarrassment," that she wakes up at night, and that she has not slept "well" since moving into the house. In addition, although in the past the Sprays entertained "quite a bit" for Mr. Spray's work, Mrs. Spray stated that she is now "reluctant" to bring people to their house.

Mrs. Spray also testified at trial that she feels "cheated" and like her soul has been "raped." The situation regarding her house makes her "very angry" and causes her to "question all the things that [she] believe[s] in and [her] faith." Mrs. Spray stated that there "really hasn't been much quality of life in this house" and that it has been "a nightmare" "[t]o an extreme degree."

Mrs. Spray cried at trial, stating that her crying was due to the "buildup of . . . frustration"; she testified that she also has cried in private over the situation regarding her house. And Mr. Spray testified at trial that he has seen Mrs. Spray cry "over this problem" on two or three occasions. In addition, Mrs. Spray testified that she does not feel safe because "there's carbon monoxide in the house" and that she suffers from hypertension as a result of the "emotional issues" she experienced regarding the house.

Viewed in the light most favorable to Mrs. Spray, her conclusory testimony does not present more than a scintilla of evidence that her alleged

19

mental anguish caused a substantial disruption in her daily routine or amounted to a "high degree of mental pain and distress" that is more than mere worry, anxiety, vexation, embarrassment, or anger.[48]   Accordingly, we sustain this portion of the Ramseys' fourth issue on appeal.

D.   James Spray

To support his mental anguish claim, James Spray testified at trial that he is "pretty embarrassed" and "pretty angry" and has felt "anxiety" over his house.  He feels that the Ramseys have breached his trust, and he "kick[s] [him]self" because he feels that he has been "cheated."  Mr. Spray cried at trial, which he testified was attributable to his "continuous" and "extreme" feelings of anger toward the Ramseys.  Mr. Spray also testified that he felt "violated" and like a "failure."

Viewed in the light most favorable to Mr. Spray, his testimony does not present more than a scintilla of evidence that his alleged mental anguish caused a substantial disruption in his daily routine or amounted to a "high degree of mental pain and distress" that is more than mere worry, anxiety, vexation,

---

[48] *Latham*, 972 S.W.2d at 69–70; *see Parkway*, 901 S.W.2d at 444; *Anderson*, 118 S.W.3d at 811; *see also Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex. 1996) ("Anything more than a scintilla of evidence is legally sufficient to support the finding.").

embarrassment, or anger.[49]  Accordingly, we hold that the evidence is legally insufficient to support an award of mental anguish damages to Mr. Spray.  We sustain the remaining portion of the Ramseys' fourth issue.[50]

### VII.    ACTUAL DAMAGES RELATED TO FENCE REPAIR

In their fifth issue, the Ramseys argue that the evidence is legally and factually insufficient to support $15,000 of the $190,445.70 actual damages award because $15,000 is attributable to the repair of a hail-damaged fence and this damage does not relate to the Sprays' DTPA claim.  The Sprays argue that the Ramseys did not preserve error on this issue in part because the actual-damages question submitted to the jury did not segregate, nor did the Ramseys ask the trial court for it to segregate, the cost to repair the fence from other actual damages awarded.  According to the Sprays, it is therefore impossible to determine what amount the jury did or did not award for the repair of the fence.

---

[49] ... *Latham*, 972 S.W.2d at 69–70; *see Cont'l Coffee*, 937 S.W.2d at 450; *Parkway*, 901 S.W.2d at 444; *Anderson*, 118 S.W.3d at 811.

[50] ... Because we sustain this issue on other grounds, we do not address, and express no opinion regarding, the Ramseys' contention that the Sprays failed to establish a causal link between the Sprays' alleged mental anguish and the Ramseys' DTPA violations.

When a damages question is submitted to the jury that includes multiple possible elements, to preserve error challenging the sufficiency of the evidence supporting one but not all of the elements of damages a defendant is required to object and ask the trial court to either exclude that element from the damages question or submit damages elements separately.[51]

In this case, the Sprays presented evidence of fence and other repair costs to the jury. The Ramseys failed to object to the submission of the actual damages question on the ground that it may include fence repair costs.[52] They also failed to request the submission of an alternate question that either excluded or segregated fence repair costs from other actual damages.[53] Accordingly, we hold that the Ramseys failed to preserve error regarding the sufficiency of the evidence supporting the portion of the actual damages they

---

[51] *Tagle v. Galvan*, 155 S.W.3d 510, 515–16 (Tex. App.—San Antonio 2004, no pet.) (holding that, because defendant did not ask for separate damage findings, it could only challenge "sufficiency of the evidence supporting the whole verdict" (citing *Thomas v. Oldham*, 895 S.W.2d 352, 360 (Tex. 1995))); *see also* Tex. R. App. P. 33.1(a); Tex. R. Evid. 103(a)(1).

[52] Jury question number eight asks, in part: "Answer in dollars and cents, for damages, if any, for: . . . c. Reasonable and necessary costs of repairing the home: Answer: $_____."

[53] Although the Ramseys objected that the actual damages award was excessive in their motion for suggestion of remittitur, they did so on grounds unrelated to the $15,000 fence repair charges.

contend is attributable to fence repair costs.[54]  We overrule the Ramseys' fifth issue.[55]

## VIII.    CONCLUSION

In conclusion, we hold that the trial court erred by failing to apply $400,000 in settlement credit against the award of economic damages; by awarding the Sprays more than three times the amount of their economic damages; and by awarding three times the amount of prejudgment interest on the Sprays' actual damages.  We further hold that the evidence is legally insufficient to support the mental anguish damages awards in favor of the Sprays.

We, therefore, reverse that part of the trial court's judgment awarding the Sprays their economic damages, and remand that part of the judgment to the trial court for recalculation of those damage awards and application of the settlement credit, pursuant to this opinion.  In addition, we reverse the trial court's award of "trebled pre-judgment interest of 7.75% from January 24, 2005[,]" assessed on the Sprays' actual and mental anguish damages, and render judgment that they recover interest of 7.75% from January 24, 2005,

---

[54] *See Thomas*, 895 S.W.2d at 360; *Tagle*, 155 S.W.3d at 519.

[55] Because the Ramseys failed to preserve error, we also do not address their unpreserved claim that the $15,000 cost to repair the fence was not reasonable and necessary.

only on the amount of the damages, if any, that they are entitled to recover upon application of settlement credit. We further reverse the trial court's award of $100,000 each in mental anguish damages to Mr. and Mrs. Spray and render judgment that they take nothing from the Ramseys on their claims for mental anguish damages. In all other respects, the trial court's judgment is affirmed.

PER CURIAM

PANEL:  CAYCE, C.J.; MCCOY and MEIER, JJ.

DELIVERED:  December 23, 2009

24